**CHICAGO READER, INCORPORATED,**
**a corporation, Plaintiff,**

v.

**METRO COLLEGE PUBLISHING, INC.,**
**a corporation, Defendant.**

**No. 79 C 2109.**

United States District Court,
N. D. Illinois, E. D.

May 7, 1980.

Dennis C. Waldon, David W. Andich, Roan & Grossman, Chicago, Ill., for plaintiff.

Edward J. Chalfie, Dennis McWilliams, McWilliams, Mann & Zummer, Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Chicago Reader, Incorporated (Chicago), an Illinois corporation, brought this action against Metro College Publishing, Inc. (Metro), a Minnesota corporation, alleging trademark infringement, false representation and unfair competition in violation of the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* and various state statutes.[1] Jurisdiction is based on 15 U.S.C. § 1121, 28 U.S.C. § 1332 and 28 U.S.C. § 1338; venue is laid under 28 U.S.C. § 1391. Currently before the Court is Metro's motion, under Fed.R.Civ.P. 12, to dismiss for improper venue or to transfer to the District of Minnesota.[2]

Chicago publishes a weekly newspaper, under its registered trademark, "Reader", which is distributed throughout the United States. Metro publishes a similar newspaper, distributed under the name "Twin Cities Reader".[3] The gravamen of Chicago's complaint is that Metro, by using the name "Twin Cities Reader" is intentionally deceiving the public as to the source, nature and quality of Metro's newspaper in an attempt to profit from the goodwill and reputation identified with the "Reader" trademark.

Metro argues that, under 28 U.S.C. § 1391[4], venue is improper here for several reasons. First, it claims that subsection 1391(a) is inapplicable because this subsection applies only to civil actions founded solely on diversity of citizenship. Since this action was brought pursuant to the Lanham Act, and thus, not founded solely on diversity, Metro claims that the propriety of venue in this district is controlled by subsection 1391(b). Under subsection 1391(b) venue is proper in the district "where all the defendants reside or in which the claim arose." Relying heavily on *Hindu Incense v. Meadows*, 439 F.Supp. 844 (N.D.Ill.1977) and *Honda Associates, Inc. v. Nozawa Trading,*

---

1. The complaint alleges violation of the Illinois Trademark Act, 1979 Ill.Rev.Stat. ch. 140, § 8 *et seq.*; the Uniform Deceptive Trade Practices Act, 1979 Ill.Rev.Stat. ch. 121½, § 311 *et seq.*; and the Illinois Consumer Fraud and Deceptive Business Practices Act, 1979 Ill.Rev.Stat. ch. 121½, § 261 *et seq.* The complaint also alleges infringement under the common law.

2. Metro's motion was made pursuant to Fed.R.Civ.P. 12 despite the fact that this rule makes no provision for transfer. In its memorandum in support of its motion, however, Metro argues that this action should be transferred pursuant to 28 U.S.C. § 1406 or 28 U.S.C. § 1404.

3. Metro's newspaper was originally distributed under the name "Twin Cities Entertainer." The name was changed to "Twin Cities Reader" in January, 1977. Chicago Reader has been distributing its newspaper under the name "Reader" since 1971. This name became a registered trademark on February 20, 1979.

4. 28 U.S.C. § 1391 in pertinent part provides:

> *(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.*

> *(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.*

> *(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.*

*Inc.*, 374 F.Supp. 886 (S.D.N.Y.1974), Metro maintains that the requirements of subsection 1391(b) cannot be satisfied because a substantial part of the claim did not occur in this district nor does Metro reside here.

Metro sets forth several arguments in support of its contentions that venue is improper in the Northern District. First, it asserts that a cause of action for trademark infringement arises where the passing off occurs and reasons that since Metro distributes its newspapers almost exclusively in the Minneapolis-St. Paul area, any alleged infringement occurred in Minnesota, not Illinois. Next, it alleges that it does not reside in Illinois, nor is it doing business here because: 1) Metro's only place of business and all its assets are in Minnesota; 2) the "Twin Cities Reader" is printed in Minnesota; and 3) the articles, editorial comments and advertising materials published in the "Twin Cities Reader" are directed toward local readers. Metro contends that its contacts with Illinois are insignificant, consisting of the distribution of thirty-six copies of the "Twin Cities Reader" in Illinois, the initiation of some telephone calls to Illinois advertisers and the attendance by Metro personnel at two Illinois trade shows in connection with one of Metro's musical publications. Thus, Metro contends that it does not have sufficient contacts with Illinois to require it to defend an action in the Northern District.

Chicago responds that Metro has been conducting business in Illinois on an ever-increasing basis. It maintains that in the past Metro has regularly conducted business within the state, billing Illinois advertisers for at least $43,000 and that Metro continues to actively solicit additional Illinois advertisers. Chicago states that Metro has solicited business with Illinois advertising agencies via mail and telephone and encourages these advertisers to distribute the "Twin Cities Reader" to their Illinois clients. Next, Chicago avers that Metro media kits, defining Metro's market as "the Twin Cities (Minneapolis and St. Paul) and the upper midwest (Minnesota, Illinois, Wisconsin, North and South Dakota, Iowa and Nebraska)" are mailed on a continuous basis to potential Illinois advertisers. Further, Chicago alleges that on two occasions Metro personnel, while in Chicago in connection with various musical productions, negotiated several sales of advertising space in the "Twin Cities Reader". Finally, Chicago contends that Metro reporters traveled to Illinois to prepare material for the Twin Cities Reader. Chicago argues that these phone calls, mailing and personal visits constitute a continuous and purposeful pattern of contact with Illinois which satisfies the doing business requirement of the venue statute.

■ It is well settled that the mere fact that the infringer has sent goods or sales literature bearing the infringing mark into the district cannot be the basis of venue, and that in a "transitory" cause of action, venue is proper only in those districts in which the trademark infringer has had significant activities. *See TransAmerica Corp. v. Transfer Planning, Inc.*, 419 F.Supp. 1261 (S.D.N.Y.1976). Thus, a claim will not be "deemed to have arisen in a district in which the defendant has had only miniscule contact . . ." *Honda Associates, Inc. v. Nozawa Trading Inc.*, 374 F.Supp. 886, 892 (S.D.N.Y.1974). *Accord, Hindu Incense v. Meadows*, 439 F.Supp. 844 (N.D.Ill.1977).

■ Weighing Metro's contacts with Illinois, it is clear that these contacts are "more than miniscule." *Tefal, S.A. v. Products International Company*, 529 F.2d 495 (3d Cir. 1976). The totality of Metro's activities, which includes: negotiations by mail and telephone with potential Illinois advertisers, the attendance at two Illinois trade shows during which sales for advertising space in the "Twin Cities Reader" were consummated, and the circulation of the "Twin Cities Reader" within the state constitute more than a "mere vestige of venue." *Hindu Incense v. Meadows*, 439 F.Supp. 844, 847 (N.D.Ill.1977).[5] Accordingly, venue is proper.

The next consideration is whether transfer is appropriate under 28 U.S.C. § 1404 or

---

**5.** Chicago also argues that Illinois is the place where the actual confusion is likely to occur.

Despite this assertion, specific instances of confusion cited in its Brief in Opposition to

**444**

28 U.S.C. § 1406. Section 1406 applies to situations in which venue is improper in plaintiff's choice of forum. Since venue is proper in the Northern District, section 1406 has no application here. However, despite the fact that venue is proper in this district, under 28 U.S.C. § 1404, the Court may exercise its discretion to transfer the action to any other district where it might have been brought.

Section 1404 provides that an action may be transferred "for the convenience of parties and witnesses, in the interest of justice." Convenience of the parties is properly determined by evaluating all the relevant facts, including plaintiff's choice of forum, the cost of obtaining the presence of witnesses and judicial economy and efficiency. *Chicago, Rock Island and Pacific R.R. v. Igoe*, 220 F.2d 299 (7th Cir. 1955).

Since Metro, the sole defendant, resides in Minnesota, the threshold requirement of the proposed transferee district is met. However, Metro has produced no evidence to show that the balance of the parties and the interest of justice heavily favor transfer. While it claims that it is located entirely in Minnesota and all its books, records and potential witnesses are located there, Metro has alleged no unusual circumstances to justify shifting the burden of inconvenience to Chicago. Since it is equally true that Chicago's principal place of business, documents and witnesses are in Chicago, the convenience of the parties is a neutral factor. Thus, the interest of justice is the determining factor here. Metro has allegedly profited from a substantial, ongoing relationship with Illinois. Therefore, it is fair and reasonable to require it to defend here. Defendant's motion to dismiss or transfer is denied.

---

Defendant's Motion occurred in Vermont, New York and California, not Illinois. However, it is unnecessary to decide if the claim arose here since Metro has sufficient contacts with Illinois to be deemed a resident for the purposes of Section 1391(b).