**FLORALIFE, INC., Plaintiff,**

v.

**FLORALINE INTERNATIONAL, INC., Defendant.**

**No. 85 C 6214.**

United States District Court, N.D. Illinois, E.D.

Oct. 9, 1985.

Charles F. Pigott, Jr., Edward D. Gilhooly, Pigott, Gerstman & Gilhooly, Ltd., Chicago, Ill., for plaintiff.

James Van Santen, Hill, Van Santen, Steadman & Simpson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This action, as its title may suggest, involves a trademark dispute between two businesses in the floral products and services industry. The plaintiff alleges that the similarities between its registered trademark FLORALIFE and the defendant's FLORALINE mark have resulted or are likely to result in confusion to the public, damage to the plaintiff's business, and invasion of its state and federal trademark protections. Before us are two fully-briefed motions: the defendant's motion to dismiss for improper venue or, alternatively, to transfer to the Eastern District of Michigan; and the plaintiff's motion for a limited preliminary injunction. For the reasons stated below, the defendant's motion is denied and the plaintiff's motion is granted.

### I. Background

For nearly fifty years, the plaintiff Floralife, Inc. ("Floralife") and its predecessor, Amling Company, have been engaged in the business of supplying specialty products for florists under the FLORALIFE trademark. Floralife has advertised its products extensively and its name is widely recognized among florists and consumers of floral supplies. From 1978 to 1983, its sales have been in the range of three to five million dollars annually. Its leading product is a preservative used to prolong the life and beauty of cut flowers.

Floralife is the owner of three registered trademarks employing the FLORALIFE name. U.S. Trademark Registration No. 398,694 was issued to Amling Company in 1942 for the word FLORALIFE rendered in special form as applied to the preservative product. Registration No. 366,178 comprises the mark FLORALIFE & DESIGN and includes the words "Helps Flowers Live Longer." Registration No. 1,181,726 consists of the mark FLORALIFE and is used for a plastic cellular composition base for making and holding cut flower arrangements. Each of these registrations remain in full force and effect.

Prior to 1984, the defendant Floraline International, Inc. ("Floraline") was doing business as a retail florist under the name Paul Kostoff Flowers, Inc. In April, 1981, the defendant filed two applications for federal registration, one on the word mark FLORALINE and the other on the composite mark FLORALINE & DESIGN. Each application claimed first use of March 7, 1981 for "retail flower store services, with the added feature of ordering floral gifts at remote booths." *Floralife, Inc. v. Floraline Int'l, Inc.,* Opposition Nos. 67,107 & 67,108, slip op. at 1–2 (T.T.A.B. Nov. 9, 1984). Floralife instituted opposition proceedings in the United States Patent and Trademark Office ("U.S.P.T.O.") against both applications and the two cases were consolidated for hearing and decision by the Trademark Trial and Appeal Board ("T.T.A.B.").

In an opinion dated November 9, 1984, the T.T.A.B. sustained the oppositions and denied the applications for registration. Floraline filed a request for reconsideration

that was denied on January 28, 1985. Floraline then filed an emergency petition before the U.S.P.T.O. to convene a new hearing panel of the T.T.A.B. On May 30, 1985, the Assistant Commissioner for Trademarks of the U.S.P.T.O. denied the petition. Pursuant to 15 U.S.C. § 1071(a), Floraline filed an appeal to the United States Court of Appeals for the Federal Circuit (No. 85–2594) that is still pending as of the date of this Memorandum Opinion.

## II. Venue

Floraline urges that we dismiss or transfer this case under 28 U.S.C. § 1406(a) (1982) for lack of venue. The only issue is whether Floraline is "doing business" in this district or Floralife's claim arises here. 28 U.S.C. § 1391(b), (c) (1982). If either of these elements are established, venue in this district is proper.

Floraline is a Michigan corporation with its principal place of business in Dearborn, Michigan. Its business consists of receiving floral gift orders from consumers and forwarding them to retail florists located in the vicinity of the gift recipient. The orders are placed from telephone terminals located in airports, department stores, and hotels or 24 hours a day from any telephone by calling a toll-free 800 number. They are forwarded via American Floral Services, a wire service with offices in Oklahoma City, Oklahoma. Customarily, they are charged to a credit card (Visa or Master Charge) of the person placing the order.

According to the affidavit of Floraline's vice-president, Albert M. Pedrosi, Floraline has no offices, salesmen, representatives, or employees in Illinois. Its only Illinois property consists of four telephone terminals, or at least 4% out of a total of nearly 100 nationwide. All the Illinois terminals are located inside Zayre department stores and contain instructional and promotional materials.[1] From October 24, 1984 (the date the Illinois terminals were installed) through July 31, 1985, Floraline had sales of $444.00 resulting from orders placed at Illinois terminals; this figure represents less than 0.6% of its total sales of $71,732.00 for that period.[2] The amount of orders placed outside Illinois for delivery by Illinois florists to residents of this district has not been disclosed by Floraline and may well be substantially greater. Nor have they disclosed the volume of orders placed through telephones in Illinois other than the four Zayre store terminals.

Clearly, Floraline is "doing business" in this district and its business contacts are "more than minuscule." *Tefal, S.A. v. Products Intern. Co.*, 529 F.2d 495, 497 (3d Cir.1976); *Chicago Reader, Inc. v. Metro College Publishing Co.*, 495 F.Supp. 441, 443–44 (N.D.Ill.1980); *McDonald's Corp. v. Congdon Die Casting Co.*, 454 F.Supp. 145, 148 (N.D.Ill.1978). While in terms of dollar volume the amount of business may be rather small, Floraline's commercial activities cannot be measured solely in terms of completed sales. Each of its telephone terminals functions as a sort of sales representative, soliciting orders, promoting Floraline's services and familiarizing the public with its name. Moreover, as Floralife points out, Floraline must have contractual arrangements with Zayre department stores as well as with retail florists in this area. *See* Pl.Ex., Affidavit of William J. Gigler.

For similar reasons, Floraline's order figures may not accurately reflect the scope of infringement occurring in this district. Infringement—the claim which must "arise" here—is a result of likely confusion in the public mind over the source of a product or service. *LeBlanc Corp. v. Selmer, Inc.*, 310 F.2d 449, 457 (7th Cir.1962), *cert. denied*, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963). For each individual

---

1. As the T.T.A.B. stated, "leaflets are placed at each kiosk in carry-away boxes so that people who cannot avail themselves of the service at that time can dial into the system from wherever they may be at a later date." *Floralife, Inc. v. Floraline Int'l, Inc.*, slip op. at 8.

2. Because Floraline makes no suggestion to the contrary, we assume that the four telephone terminals attested to by Mr. Pedrosi are located within the Northern District.

who actually uses the defendant's service to make a floral purchase, many others must pass by and perceive the mark. Some may stop to read the promotional materials. And with each passerby, and especially with each "reader," the likelihood of confusion and the substantiality of the plaintiff's claim increases. Thus, the confusion likely to occur here may far exceed actual orders placed from the four phones.

■ Because the defendant resides in the Eastern District of Michigan, we have discretion to transfer the case there if doing so would serve the convenience of parties and witnesses and the interests of justice. 28 U.S.C. § 1404(a) (1982). Floraline emphasizes that it is a small, relatively new corporation while the plaintiff is an established company with annual sales in the millions. These facts alone do not meet the defendant's "strong burden" of proving that its home district is a more appropriate forum. *Technical Publishing Co. v. Mayne*, 206 U.S.P.Q. 284, 288 (N.D.Ill. 1979). To transfer this case would merely shift the burden of litigating in an out-of-state forum from the defendant to the plaintiff. *Id.* In light of the plaintiff's customary right to choose the forum and, as we discuss below, Floraline's knowing assumption of the risks of this litigation, we decline to order a transfer.

### III. Preliminary Injunction

The filing of this lawsuit was prompted by an advertisement appearing June 22, 1985 in *Flower News/Grower's Digest*, a national trade weekly for the floral industry. The advertisement, headlined "Introducing the Industry's First Full Service Credit Card" and "Attention Wholesale and Retail Florists," contains the FLORALINE mark and describes the defendant's services as follows:

> During the past year and a half, Floraline has installed nearly 100 remote floral order telemarketing units in airports and other select locations nationwide. Those orders have been relayed to individual florists via national wire service channels. The telemarketing volume now allows Floraline International to introduce one of the most exciting and rewarding programs ever to be offered in the industry. First, Floraline "subscribers" will be the receivers of our telemarketing floral orders. Second, an order transfer system will allow subscribers to exchange "wire orders" using the Floraline Directory. Third and most exciting, each subscriber will be supplied with a credit card which will allow instant transfer of funds between Floraline subscribers. The "Quick-Trans" credit card will also allow subscribers to charge purchases with wholesalers and manufacturers.

Pl.Ex. 7. Eighteen days after this advertisement appeared, Floralife filed its complaint and motion for preliminary relief.[3] By its motion, Floralife seeks to preliminarily enjoin Floraline International (1) from installing any new telemarketing units in airports and other locations under the FLORALINE mark; and (2) from soliciting any additional subscribers for floral industry credit cards containing the FLORALINE mark.

In deciding whether to grant or deny preliminary injunctive relief, our discretion is guided by four factors:

(1) whether there is an adequate remedy at law (that is, whether interim harm caused by the activity to be enjoined can be completely offset by a subsequent award of damages or other legal relief);

(2) whether any such irreparable harm to the plaintiff caused by a failure to enjoin the activity outweighs irreparable harm to the defendant caused by an injunction;

(3) whether the plaintiff has some likelihood of success on the merits; and

(4) whether grant of the injunction would disserve the public interest.

---

**3.** In its complaint, Floralife alleges violations of the Lanham Act, 15 U.S.C. §§ 1114 (trademark infringement) and 1125 (false designation of origin); the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121–½, ¶ 311 *et seq.* (1985); the Illinois Anti-Dilution Statute, Ill.Rev.Stat. ch. 140, ¶ 22 (1985); and common law unfair competition.

*Maxim's Ltd. v. Badonsky,* 772 F.2d 388, 390 (7th Cir.1985) (citing *Wessley-Jessen Division v. Bausch & Lomb, Inc.,* 698 F.2d 862, 864 (7th Cir.1983)). Under the "sliding scale" approach adopted in *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380, 382–92 (7th Cir.1984), factor two (the extent to which irreparable harm to the plaintiff exceeds irreparable harm to the defendant) occupies an inverse relationship to factor three (the plaintiff's likelihood of success on the merits). As the court explained, "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* at 387.

In the sections that follow, we evaluate Floralife's showing as to each of the four factors in turn.

### A. No Adequate Remedy at Law and Irreparable Harm

A plaintiff seeking a preliminary injunction must first show that he has no adequate remedy at law and that he will suffer irreparable harm if the injunction is denied. The operative phrases focus inquiry on two distinct but closely-related kinds of harm: (1) harm that damages or other legal remedy can never redress (whether because the defendant may become insolvent, damages are difficult to calculate, or any other reason); and (2) interim harm that the plaintiff would suffer while litigation is pending unless a preliminary injunction is granted. *See* O. Fiss & D. Rendleman, *Injunctions* 59.

Floralife maintains that the further expansion of the defendant's marketing operations would cause irreparable harm to Floralife's business. It emphasizes the long use of its corporate name and extensive promotion of the FLORALIFE mark. Moreover, it contends that a presumption of irreparable harm arises in trademark infringement cases. *Maxim's Ltd. v. Badonsky,* 772 F.2d 388, 391–92 (7th Cir. 1985). The rationale for this rule was set forth in *Wessley-Jessen v. Bausch & Lomb,* 698 F.2d 862, 867 (7th Cir.1983):

> Courts readily find irreparable harm in trademark infringement cases because of the victim's inability to control the nature and quality of the infringer's goods, *Ideal Industries v. Gardner Bender, Inc., supra,* 612 F.2d [1018] at 1026 [ (7th Cir.1979) ], not because the infringer's goods are necessarily inferior. Even if the infringer's goods are of high quality, the victim has the right to insist that its reputation not be imperiled by another's actions. *Processed Plastics Co. v. Warner Communications, Inc.,* 675 F.2d 852, 858 (7th Cir.1982); *see also* 4 R. Callman, Unfair Competition, Trademarks and Monopolies, § 88.3(b) at 205–06 (3rd ed. 1970).

*Wessley-Jessen,* 698 F.2d at 867.

Floraline counters that the presumption of irreparable harm is rebutted in this case by Floralife's delay in filing suit. Since Floralife must have known of the defendant's use of the FLORALINE mark at least as of the date it instituted opposition proceedings (apparently in October of 1982), the defendant urges us to find that Floralife's nearly three year delay in filing suit for infringement invalidates its claim of irreparable harm. Floraline directs us to the following language in a recent opinion from the Court of Appeals for the Tenth Circuit:

> Delay in seeking relief . . . undercuts any presumption that infringement alone has caused irreparable harm pendente lite; therefore, such delay may justify denial of a preliminary injunction for trademark infringement. . . . "Delay of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."

*GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984) (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609, 205 U.S.P.Q. 1055, 1062 (S.D.N.Y. 1979)).

■ Although we agree that delay in filing for a preliminary injunction is a relevant consideration, we reject the conclusion urged upon us by the defendant. The in-

stant case is distinguishable from *GTE* in several respects. First, Floralife's motion was filed promptly (less than three weeks) after the occurrence of the alleged acts of infringement at which the motion is aimed (that is, the expansion of Floraline's business announced in the June 22 advertisement). Second, unlike the plaintiff in *GTE*, Floralife does not seek an order enjoining the defendant from using its chosen trade name; it merely seeks to preserve the status quo pending litigation. Even conceding that the plaintiff might have delayed too long if it were seeking some other form of relief (such as an order enjoining the defendant from using the FLORALINE mark), there can be no question that it acted promptly as to the specific activities which are the subject matter of its motion.

Third, we reject the defendant's conclusions as to the relevant dates. While the defendant would have us measure the delay period as of fall, 1982 when the plaintiff learned of the defendant's application to register the FLORALINE mark, all indications are that Floralife did not know of Floraline's plans to institute a credit card program and was not aware of the extent of the telemarketing program before June 22, 1985. In fact, the T.T.A.B. in its opinion noted that there was no evidence showing that the defendant had used the mark prior to January 10, 1984. As the T.T.A.B. observed, "Advertising an intention to use a mark in connection with services cannot serve as a basis for registration under the Trademark Act." *Floralife, Inc. v. Floraline Int'l, Inc.*, slip op. at 9 n. 10. By analogy, advertising an intention to use a mark is not sufficient to trigger whatever duty the plaintiff may have to file promptly for an injunction.

Fourth, the plaintiff's prosecution of opposition proceedings before the Patent Board indicates that it *did* sense impending irreparable harm from the defendant's use of the FLORALINE mark. Those proceedings apparently were commenced within two weeks after learning of the defendant's application. While a "Notice of Opposition to Registration is not a claim of infringement," *James Burrough Ltd. v.*

*Sign of Beefeater, Inc.*, 572 F.2d 574, 578 n. 5 (7th Cir.1978), it is "an assertion by the owner of a trademark that the applicant's proposed mark is likely to confuse the public as to the source of the product or service." *Id.* Thus, a notice of opposition sufficiently informs the registrant of the trademark holder's objections and renders unreasonable any detriment the registrant may suffer in reliance on the plaintiff's delay in filing suit. *See Ideal Indus. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir.1979) (mere delay in filing for preliminary injunction does not bar relief; defendant must have "been lulled into a false sense of security or ... acted in reliance on the plaintiff's delay"), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

Finally, it is far from certain that our Court of Appeals would accept the reasoning of *GTE*. In *Ideal Industries*, the Court found that a fifteen month delay from the time the plaintiff learned of the defendant's intentions until it moved for a preliminary injunction was not sufficient to overcome the presumption of irreparable harm. 612 F.2d at 1026. "[D]elay is only one among several factors to be considered," the Court concluded; the Court could "not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction." *Id.* at 1025. Further, in *James Burrough, Ltd.*, the Court of Appeals upheld the issuance of a permanent injunction despite a fifteen *year* delay in filing suit for infringement. While laches barred any recovery of damages for the period prior to filing, the Court found that injunctive relief and post-filing damages remained available since "[t]rademark infringement is a continuous wrong [that] gives rise to a claim for relief as long as the infringement persists." 572 F.2d at 578.

In sum, we are satisfied that Floralife will suffer irreparable harm if a preliminary injunction is denied. The nature of its alleged injuries—harm to goodwill and loss of control over its reputation—call for sub-

jective judgments not easily translated into monetary damages. While Floralife may have delayed in bringing suit for trademark infringement, we need not decide at this time either the precise length of the delay or whether it was unreasonable in light of the pendency of the opposition proceedings. Because of those proceedings, and because trademark infringement, in any event, is a "continuous wrong," heightened in this case by the alleged infringer's expanding activities, the minimal delay that occurred did not lull the defendant into a false sense of security. Meanwhile, plaintiff's potential injury is increasing.

### B. Balance of Harms

The second factor in the test for a preliminary injunction requires us to balance the plaintiff's irreparable harm with the harm the defendant will suffer if the preliminary injunction is granted. We recognize that Floraline may be injured in its new business by an order preventing it from installing additional telemarketing kiosks or soliciting additional credit card customers. At the least, it may sacrifice some of the value of its recent advertising investment. In addition, an order to suspend *pendente lite* its plans for expansion may, if a competitor emerges, cause it to lose competitive advantages that cannot be reclaimed at a later date.

On the other hand, Floraline conceded during the opposition proceedings that it had full knowledge of the plaintiff's trademarks prior to adopting its mark. *Floralife, Inc. v. Floraline Int'l, Inc.,* slip op. at 3, 7; *see also id.* at 13–14 (noting possibility of bad faith, though evidence insufficient for specific finding). Further, when the defendant expanded its activities just three weeks after an adverse final decision of the Commissioner, its officers must have been cognizant of a substantial risk of being charged with infringement. In assessing the defendant's irreparable harm, we exclude the burden it voluntarily assumed by proceeding in the face of a known risk. "One entering a field already occupied by another has a duty to select a trademark that will avoid confusion," *Ideal Indus-*

*tries,* 612 F.2d at 1026; one who fails in this duty cannot later "complain that having to mend its ways will be too expensive." *Processed Plastic Co. v. Warner Communications,* 675 F.2d 852, 859 (7th Cir.1982); *see also Wessley-Jessen,* 698 F.2d at 867. We also note that Floralife's careful tailoring of its request for relief substantially mitigates the risk of irreparable harm to the defendant.

In light of these considerations, we are satisfied that the harm which may be suffered by the defendant if an injunction is granted does not outweigh the plaintiff's harm if relief is denied. (Because of our finding below that the plaintiff has a high likelihood of success on the merits, we need not make a more precise measurement of the "net" harm suffered by the plaintiff. *See Roland Machinery,* 749 F.2d at 392).

### C. Likelihood of Success on the Merits

The next factor for our consideration is the plaintiff's likelihood of success on the merits. In the opposition proceedings before the T.T.A.B., the only issue was "whether applicant's mark FLORALINE, when applied to the services for which it seeks registration, so resembles opposer's previously used and registered mark FLORALIFE, and opposer's trade name 'FLORALIFE, Inc.' as to be likely to cause confusion, or to cause mistake, or to deceive." *Floralife, Inc. v. Floraline Int'l, Inc.,* slip op. at 9. On a fully-documented record, the T.T.A.B.'s three-member panel of experts concluded that a likelihood of confusion existed. Its thorough and well-reasoned opinion includes the following findings:

Comparing the marks, there is no question that they are strikingly similar both in sound and appearance. While the marks may convey different commercial impressions to some potential purchasers, this distinguishing factor obviates the likelihood of confusion only where potential purchasers are aware of the one letter difference or where their recall of the mark previously encountered in

advertising or by word-of-mouth recommendation is accurate.

\* \* \* \* \* \*

In this case, applicant's own testimony emphasizes that its FLORALINE flower ordering service is expressly designed for those persons in our society who find it necessary to order flowers while rushing through airport terminals and the like, a marketing situation which is fraught with the possibility of mistake or confusion of marks.

\* \* \* \* \* \*

[A]pplicant's evidence as to "flora"-prefixed marks did not turn up any mark in use which is the same or similar to the mark of the opposer, a demonstration of the mark's distinctiveness, rather than its weakness.

\* \* \* \* \* \*

As to the respective goods and services of the parties, there is no question that applicant's services, as they are identified in the application for registration, are closely related to opposer's products.

\* \* \* \* \* \*

It seems to us very likely that persons previously acquainted with opposer's FLORALIFE trademark, either as proprietors of retail florist outlets or ordinary members of the public, might easily assume upon encountering the very similar mark FLORALINE in connection with retail flower store services that such services were related as to their source to that of the FLORALIFE trademark.

\* \* \* \* \* \*

[I]t seems to us that these services are sufficiently related [to] registrant's goods to cause confusion. After all, the service of ordering flowers through reg-

ularly established florists in other cities enhances the operations of those retail establishments, making such a business a very compatible and logical extension of opposer's FLORALIFE accessories business, especially considering the fact that the good will developed with its customers under the FLORALIFE trademark could easily be carried over to the rendering of remote ordering services on behalf of the same enterprises.

*Floralife, Inc. v. Floraline Int'l, Inc.*, slip op. at 10–13.

The present lawsuit raises precisely the same issue considered by the T.T.A.B.— whether there is a likelihood of confusion between the defendant's mark and the plaintiff's mark. *Compare* 15 U.S.C. § 1114(1)(a) (1982) (trademark infringement) *with* 15 U.S.C. § 1052(d) (1982) (trademark registration).[4] Given the T.T.A.B.'s careful consideration of the issue, a full trial on the merits will probably result in a similar determination.

Our holding finds support in the Court of Appeals decision in *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375 (7th Cir.1984). In *EZ Loader*, the plaintiff instituted opposition proceedings in the T.T.A.B. which determined that the registration of the defendant's mark would *not* result in a likelihood of confusion. This determination was appealed to the Court of Appeals for the Federal Circuit, which affirmed. The plaintiff then brought suit in district court alleging various state and federal law claims of trademark infringement and unfair competition. (In fact, precisely the same claims as alleged in the instant case). Finding that the T.T.A.B.'s determinations as affirmed by the Federal Circuit were entitled to preclusive effect, the district court granted summary judg-

---

**4.** Confusion is also at the core of Floralife's claims under 15 U.S.C. § 1125 (1982), the Illinois Deceptive Trade Practices Act and the common law of unfair competition. *See* Complaint, ¶¶ 28–35; *cf. EZ Loader Boat Trailer, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 380–81 (7th Cir. 1984) (T.T.A.B. findings as to likelihood of confusion may provide basis for collateral estoppel on subsequent claims under 15 U.S.C. § 1125,

Illinois Deceptive Trade Practices Act and common law unfair competition). We need not determine whether Floralife also has a likelihood of success on its claim under the Illinois Anti-Dilution statute. In order to establish a right to a preliminary injunction, it is sufficient to show a likelihood of success on some, though less than all, claims.

ment for the defendant. In affirming, the Seventh Circuit made a number of observations we consider pertinent to the instant case:

[The plaintiff-appellant] contends that the limited jurisdiction of the T.T.A.B. argues against affording preclusive effect to its findings. However, the limited remedial powers of the Board are not in and of themselves an argument against the application of collateral estoppel. Courts have long held that where an agency acts in a judicial capacity and resolves disputes properly before it, the agency's findings may be given preclusive effect as long as the procedures utilized by the agency do not prevent the party against whom estoppel will be applied from having a fair opportunity to present its case.

\*    \*    \*    \*    \*    \*

There is no question that the T.T.A.B. was acting in a judicial capacity. An opposition proceeding *is* an adversary proceeding. Both parties to this appeal were represented by attorneys before the Board; both presented evidence and submitted briefs.

*Id.* at 377–78 (citations omitted); *see also Flavor Corp. v. Kemin Indus.,* 493 F.2d 275 (8th Cir.1974).

The reasoning of *EZ Loader,* developed in the context of issue preclusion, is equally applicable to a determination of the plaintiff's likelihood of success on the merits. In a case presenting the identical issue determined by the T.T.A.B. after a full and fair proceeding, the T.T.A.B.'s findings establish a high likelihood of success on the merits for the party who prevailed before them.

We need not decide the question left open by the *EZ Loader* Court—whether the T.T.A.B.'s findings, unsupported by an affirmance in the Federal Circuit, would collaterally estop the losing party from relitigating the issue of likelihood of confusion. *See id.* at 378. We note, however, that the "federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel, unless the appeal removes the entire case to the appellate court and constitutes a proceeding de novo." 1B *Moore's Federal Practice* 521–22 (2d ed. 1984) (footnotes omitted). In filing its appeal in the Federal Circuit, Floraline elected to forego its statutory option of appealing to a district court for de novo review. 15 U.S.C. § 1071. As in *EZ Loaders,* where this fact weighed in favor of applying collateral estoppel, we think it provides an additional reason for giving substantial weight to the T.T.A.B.'s findings.

### D.  The Public Interest

Floraline has suggested no reason why the issuance of an injunction would disserve the public interest. Absent such a showing, the statutory policies favoring trademark protection are determinative. As the Supreme Court recently stated:

Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that "a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them."

*Park 'N' Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985); *see also Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1429–30 (7th Cir.1985). Equally important policies are expressed in the Illinois laws of unfair competition. Given the likelihood that any expanded use of the defendant's FLORALINE mark would engender additional confusion in the minds of the public, we are persuaded that the public interest would be best served by granting the limited relief requested.

### IV.  Right to an Evidentiary Hearing

At the hearing on these motions, Floraline's attorney objected to our expressed intention to grant a preliminary injunction without scheduling an evidentiary hearing. Floraline's attorney correctly stated the general rule that credibility issues should not be resolved on a motion for preliminary injunction without first holding an eviden-

tiary hearing. *See, e.g., Medeco Security Locks, Inc. v. Swiderek,* 680 F.2d 37, 38 (7th Cir.1981). An equally well settled exception, however, is that, when no disputed factual issues are present, an evidentiary hearing is not necessary. *Williams v. Curtiss-Wright Corp.,* 681 F.2d 161, 163 (3d Cir.1982) (copyright infringement); *Socialist Worker's Party v. Illinois State Bd. of Elections,* 566 F.2d 586, 587 (7th Cir.1977), *aff'd,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Spartacus v. Illinois Indus. Univ.,* 502 F.Supp. 789, 805 (N.D.Ill.1980); 11 Wright & Miller, *Federal Practice and Procedure* § 2949 at 478–79 (1973).

The substantial record before us—consisting of affidavits, verified pleadings, and exhibits (including the T.T.A.B.'s opinion)—reveals no relevant disputed questions of fact. True, the question of confusion is usually characterized as one of fact; but our conclusion that Floralife has a likelihood of success on the merits is not based on the resolution of conflicting evidence as to confusion. Rather, our decision rests, securely we think, on the apparent soundness of the T.T.A.B.'s findings. The limited nature of the relief sought further obviates the need for an evidentiary hearing in this case.

### V. Conclusion

In conclusion, we observe that, if the defendant in introducing its new service had not intended to benefit from the goodwill associated with the FLORALIFE mark, it could easily have adopted a nonconfusing mark. It can still do so. As the T.T.A.B. pointed out, the one-letter difference between the two marks is the principal source of the confusion. A number of alternative marks—equally suitable for the defendant's services, yet non-confusing—come readily to mind. It is difficult to understand why the defendant, in the face of an adverse T.T.A.B. determination, continues to expend time and money on behalf of a mark that is not peculiarly or particularly appropriate for its business.

The defendant's motion to dismiss or transfer is denied. The plaintiff's motion for a preliminary injunction is granted. The defendant will be enjoined (1) from installing any new telemarketing units in airports and other locations under the FLORALINE mark; and (2) from soliciting any additional subscribers for floral industry credit cards containing the FLORALINE mark.

An appropriate order will enter.