Don BEVERIDGE, Dirk Beveridge, D.W. Beveridge Jr., and Associates, Inc., et al., Plaintiffs,

v.

MID–WEST MANAGEMENT, INC., d/b/a Midwest Family Broadcast Group, Charles Mefford and Mefford Achievement Systems, Defendants.

No. 98 C 4689.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 24, 1999.

Michael Brent Lulay, Michael B. Lulay & Associates, Ltd., Wheaton, IL, for Plaintiffs.

John Edward Rosenquist, Leydig, Voit & Mayer, Ltd., Chicago, IL, Jeffrey Stephen Ward, Lathrop & Cark, Madison, WI, for Defendants.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

This action is brought by Don Beveridge, Dirk Beveridge, and the corporations through which they conduct their motivational speaking business, D.W. Beveridge Jr. and Associates, Inc., Beveridge Business Systems Inc., Beveridge Performance, Inc., The Beveridge Institute, Inc., The Beveridge Consulting Group, Inc., and Dirk Beveridge and Associates, Inc. (collectively the Beveridge companies). Dirk Beveridge is a resident of Illinois, Don Beveridge a resident of Florida, and all of the Beveridge companies are Illinois corporations with their principal place of business in Illinois. Plaintiffs allege that defendant Charles Mefford, a Texas resident, his company Mefford Achievement Systems, Inc., a sole proprietorship operating primarily in Texas and Wisconsin, and a company with whom Mefford has done business, Mid–West Management, Inc., are liable for violating the Lanham Act (Count I); violating the Illinois Deceptive Trade Practices Act (Count III); unfair competition (Count V); breach of contract (Counts VII and IX); and misappropriation of a competitor's name (Count XI).[1]

Since filing this action, plaintiffs have moved for the voluntary dismissal of Midwest Management, Inc., which we grant,

---

1. The intervening counts (II, IV, VI, VIII, X and XII) are claims for punitive damages under the theory alleged in the count immediately preceding (*e.g.* Count II is a claim for punitive damages under the Lanham Act).

and this opinion is consequently directed solely to the defendant Charles Mefford in his individual capacity. *See* Plaintiffs' Rule 41(b) Mot. to Voluntarily Dismiss Mid–West Management, December 29, 1998. In addition, both parties have filed multiple motions, including defendant's motion to dismiss for lack of personal jurisdiction, defendant's motion to dismiss for improper venue or in the alternative to transfer venue, plaintiffs' motion to dismiss counterclaim, plaintiffs' motion to dismiss affirmative defenses and defendant's substantive motions for summary judgment and dismissal. For the reasons stated below, we deny defendant's motion to dismiss on the grounds of lack of personal jurisdiction and improper venue, but stay a decision on the motion to transfer until the parties submit additional filings.

## FACTS

Despite the volume of the pleadings and motions filed by the parties, the facts of this case are relatively straightforward. Plaintiffs Don and Dirk Beveridge are in the business of giving motivational seminars and programs in the areas of sales and sales management. They have developed and marketed a certain system of self-improvement and motivation ("plaintiffs' system"), and they give lectures about the system in several states, including Illinois. To conduct these lectures, they hire speakers who have participated in their programs. Defendant Charles Mefford was one of plaintiffs' lecturers, working for them on more than twenty-five occasions between May 1987 and February 1992. *See* Complaint, Appendix, Mefford/Beveridge Lecture Agreements. At least half of Mefford's lecture contracts were performed in Illinois. Through the performance of these contracts, Mefford had access to the documents and details of plaintiffs' motivational system. Among other provisions, the contracts contained a confidentiality clause prohibiting Mefford from disclosing any "confidential information" he obtained while in the employ of the Beveridge Institute, a clause requiring him to return all documents, books, etc.,

upon terminating his relationship with the company, and a three year non-compete agreement. *See* Complaint, Appendix.

Defendant Mefford's company, Mefford Achievement Systems (MAS) is a sole proprietorship in the business of giving seminars on sales and sales management. Mefford has never conducted any of his seminars in Illinois, nor does he specifically seek to attract clients from that state. During the last two years Mefford has advertised his services in a national publication, Radio Ink, which may be circulated in Illinois. In addition, Mefford provides personal management and sales consulting services to radio stations throughout the country. *See* Mefford Motion to Dismiss (Pers. Jur.), at 2. Specifically, Mefford has provided such services to an Illinois company, Radio Works, Inc. which operates three radio stations in that state. Prior to 1993 these radio stations were owned by former defendant Mid–West Management. Mefford has a contract with Radio Works under which he is paid $20,000 to work for them for approximately 6 days each year.

In July 1998, Don and Dirk Beveridge and their various companies filed this suit claiming that Mefford's lecturing system incorporated materials that he had misappropriated while working for the Beveridge companies. They claim that his lecturing activities violate their trademarks on such material and the non-compete and confidentiality provisions of the lecturing contracts. They generally aver that his work with the radio broadcast industry is similarly in violation of their rights. *See* Complaint, ¶ 13.

## DISCUSSION

Defendant Mefford has moved to dismiss on the ground that this court lacks personal jurisdiction over him and that venue is improper in this district. As a preliminary matter, plaintiffs argue that Mefford waived these defenses because he filed a counterclaim and thereby submitted himself to the jurisdiction of this court.

■ The Seventh Circuit has not decided whether the filing of a pleading that contains both a challenge to personal jurisdiction and a defense will preserve the defense or render it waived, and the district courts of this jurisdiction have taken both approaches. One court in this jurisdiction has ruled that filing of a permissive counterclaim waives any objection to personal jurisdiction, even when the objection is contained in the same document. *Outboard Marine Corporation v. Stumbras,* 1991 WL 22511 (N.D.Ill.1991) (Leinenweber, J.). Another has concluded that a personal jurisdiction defense is preserved when asserted in a pleading, even if the pleading contains a counterclaim and regardless of whether the counterclaim is compulsory or permissive. *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.,* 1992 WL 330023 (N.D.Ill.1992) (Conlon, J.) (citing cases). We think that this is the more sound approach. As Judge Conlon noted in *Israel Travel,* to hold otherwise defeats the purpose of Rule 12, which was to eliminate the need for special appearances to challenge jurisdiction. 1992 WL 330023 at *1. Because defendant's answer raised the defenses of both the personal jurisdiction and venue, we will consider the merits of these arguments.

*Personal Jurisdiction*

In his motion to dismiss Mefford argues that he has had only two sources of contact with Illinois. First, pursuant to his contract with Radio Works, he comes to Illinois six days each year to provides sales and consulting services (the exact nature of which is unclear), and has done so since at least 1993. *See* Defendant's Mot. to Dismiss (Pers.Jur.), at 2. In return, Radio Works pays him $20,000 per year, which represents 10% or less of Mefford's total gross receipts. Second, Mefford advertises his services in a national journal, which he concedes may be circulated in Illinois. He maintains that because these activities are unrelated to the contract, tort and Lanham Act claims alleged in this action, the case must be dismissed. In response, plaintiffs argue that defendant's contacts with Illinois through the lecturing services he performed for the Beveridge Institute between 1987 and 1992 are sufficient to render him subject to the jurisdiction of Illinois.[2] Having considered these arguments, we conclude that defendant is subject to specific personal jurisdiction in Illinois and consequently before this court.

A federal district court sitting in diversity has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997) (citations omitted). As a result, three distinct sources must usually be examined to determine whether jurisdiction exists: state statutory law, state constitutional law, and federal constitutional law. *Id.* at 1276. Under Illinois law, personal jurisdiction is permitted to the extent allowed by the federal constitution, *see* 735 ILCS 5/2–209(c), and thus we need only pursue the last inquiry in this case.

■ To determine whether the requirements for personal jurisdiction are satisfied under the due process clause of the Fourteenth Amendment, we look to see whether the defendant has "certain mini-

---

**2.** Although plaintiffs vaguely reference defendant's contract with Radio Works in their complaint (*cplt.,* ¶ 13), they do not rely on defendant's past or present work for the Illinois company to meet their burden of establishing that plaintiff has sufficient minimum contacts with Illinois to satisfy due process. Mefford's regular (albeit intermittent) work in Illinois would, at a minimum, make him subject to specific personal jurisdiction in that state. Thus, to the extent that plaintiffs' action arises out of that contact, jurisdiction would be appropriate. Perhaps plaintiffs do not rely on the Radio Works contract because their suit is unrelated to that work. If so, it is unclear why they would reference it in the complaint. In any event, because plaintiffs bear the burden of establishing personal jurisdiction, and because they rely solely on defendant's contacts with Illinois through his contractual relationship with plaintiffs, we will focus solely on those contacts to determine the personal jurisdiction issue.

mum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). Depending on their nature and frequency, a defendant's contacts with the state can give rise to two different types of personal jurisdiction: specific and general. General jurisdiction refers to suits that neither arise from nor are related to the defendant's contacts within the forum, and it is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. *RAR,* 107 F.3d at 1277 *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Defendant Mefford's contractual relationship with the plaintiffs is not the sort of general and continuous business relationship sufficient to subject himself to general jurisdiction in Illinois. He does not maintain an office or conduct a business from that state, nor does he derive a substantial percentage of his income from that jurisdiction. Instead, he entered the state on several specific occasions, all of which relate to his contracts with Beveridge. The grounds for general jurisdiction are consequently lacking.

Specific jurisdiction, on the other hand, refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *RAR,* 107 F.3d at 1277 *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Seventh Circuit has expanded on the requirements of specific jurisdiction:

> In specific jurisdiction cases, we must decide whether a defendant has "purposefully established minimum contacts within the forum State" and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528

(1985). Crucial to the minimum contacts analysis is showing that the defendant "should reasonably anticipate being haled into court [in the forum State]," *id.* at 474, 105 S.Ct. at 2183 (*quoting World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)), because the defendant has "purposefully avail[ed] itself of the privilege of conducting activities" there, *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183 (*quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). To give a concrete example, an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts. *See Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant. *Id.* at 479, 105 S.Ct. at 2185–86.

Remember, however, that specific jurisdiction requires that the suit "arise out of" or "be related to" these minimum contacts with the forum state. We cannot simply aggregate all of a defendant's contacts with a state-no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts. As the Supreme Court stated in *World–Wide Volkswagen,* the Due Process Clause of the Fourteenth Amendment "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. Potential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions. Thus, when conducting business

with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future forum contacts will render them liable to suit there. Unless their contacts are continuous and systematic enough to rise to the level of general jurisdiction, individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another.

*Id.* at 1277–78.

■ Applying this standard to the case before us, we find that Mefford's negotiation and performance of the lecture contacts in Illinois subject him to jurisdiction here for any claims arising out of those activities. Accepting plaintiffs' allegations as true, Mefford approached Dirk and Don Beveridge about becoming a speaker for their program when he attended a Beveridge conference in Illinois in 1986. Between April 1987, and February 1992, Mefford executed twenty-five contracts to this effect (*see* original cplt., attachment), which were drafted in Illinois by Beveridge, signed by Mefford in Wisconsin and sent back to defendants. Of these speaking engagements, fifteen were performed at various locations in Illinois. Plaintiffs' contract claims are largely related to these lecture contracts and the confidentiality and non-compete provisions they contain. The state tort claims also have their root in Beveridge's and Mefford's contractual relationship because they relate to Mefford's alleged misuse of information that he obtained due to his status as a Beveridge seminar speaker. We conclude that Mefford availed himself of the privilege of doing business in Illinois and thus subjected himself to the jurisdiction of this court. His contacts were not of the "random," "fortuitous," or "attenuated" kind against which the due process clause was meant to guard. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) *quoting Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

■ The Lanham Act claim gives us greater pause. Mefford correctly argues that in order to establish personal jurisdiction over defendant, plaintiffs usually bear the burden of showing that each claim arises from the defendant's contact with the forum state. *See, e.g., Rice v. Nova Biomedical Corp.,* 763 F.Supp. 961, 963 (N.D.Ill.1991) (because each count of a complaint is ordinarily a separate statement of claim, the sufficiency of each claim, including the determination of whether the court has personal jurisdiction over the defendant, must be individually determined); *International Honeycomb Corp. v. Transtech Service,* 742 F.Supp. 1011, 1012 (N.D.Ill.1990) (same). Thus, although Mefford's contacts with Illinois are sufficient to subject him to this jurisdiction on the contract-related claims, the situation is not as clear with respect to the Lanham Act count.

The Illinois long arm statute states that a defendant will be subject to the jurisdiction of Illinois courts if the defendant commits a tortious act within the state and the suit arises from that act. 735 ILCS 5/2–209(a)(2). "Infringement of intellectual property rights sounds in tort." *Lifeway Foods, Inc. v. Fresh Made, Inc.,* 940 F.Supp. 1316, 1319 (N.D.Ill.1996) (quotations omitted). Under tort law, we look to the place where the plaintiff sustained its injury and the defendant's relationship to that place to determine where the tort occurred and whether the defendant is amenable to suit in that location. *Id.* When intellectual property rights are impaired, the injury is generally said to be felt in the place where the holder of those rights conducts its business. *Clipp Designs, Inc. v. Tag Bags, Inc.,* 996 F.Supp. 766, 768 (N.D.Ill.1998). Although this rule is often stated broadly, it does not mean that any defendant, anywhere, violating an Illinois plaintiff's trademark, will unilaterally be subject to jurisdiction in that state. Illinois courts have limited their reach by holding that an economic injury by itself will not support the conclusion that a tortious act was committed in Illinois. *See R.*

*W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill.2d 304, 95 Ill.Dec. 496, 489 N.E.2d 1360 (1986). Thus, in addition to alleging that they were injured by defendant's conduct, plaintiffs must show that the defendant "entered" the State of Illinois by committing some tortious act within its borders. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 412 (7th Cir.1994) (personal jurisdiction over Maryland defendant proper in Indiana because Indiana plaintiff suffered injury to its trademark in that state and defendant entered the state through televised broadcasts); *Clipp Designs*, 996 F.Supp. at 768 (infringement of trade dress injury felt in Illinois because plaintiff that held that trade dress protection was an Illinois resident and defendant entered the state by taking orders for the infringing product from Illinois residents); *Lifeway Foods*, 940 F.Supp. at 1320 (defendant not subject to Illinois jurisdiction because defendant presented affidavit stating that it had never sold the allegedly infringing products in Illinois and had never advertised in Illinois, and thus plaintiff could show only economic injury insufficient to support jurisdiction); *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F.Supp. 470, 473 (N.D.Ill.1992) (Illinois jurisdiction proper in intellectual property infringement case where plaintiff alleges that the out-of-state infringer obtained the allegedly protected property by visiting the plaintiff's Illinois business and "spiriting" away such property).

Mefford argues that because he never sold, presented or solicited participation for his program in Illinois, he should not be subject to jurisdiction in that state. Plaintiffs maintain that because Mefford's access to their protected material arose solely from his lecture contracts, which were performed in part in Illinois, he sufficiently "entered" that state for purposes of the Lanham Act claim. Although this is a close case, we agree with plaintiffs. Unlike the typical Lanham Act claim, where no tortious act is necessary to obtain the plaintiff's protected property because it is at large in a public domain, here plaintiffs specifically allege that defendant misappropriated the material from their Illinois business. We find this alleged act sufficient to subject defendant to the jurisdiction of Illinois and consequently that of this court. We further observe that even if this conduct alone did not suffice, the fact that the Lanham Act claim is inextricably factually linked to the other counts properly before us makes our exercise of jurisdiction over the intellectual property claim appropriate under the doctrine of pendent personal jurisdiction. *See Banwell v. Illinois College of Optometry*, 981 F.Supp. 1137, 1141 n. 4 (N.D.Ill.1997) (holding that under the doctrine of pendent personal jurisdiction a district court may exercise its discretion to hear claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists).[3]

*Venue*

■ Defendant Mefford next argues that Illinois is an improper venue for this suit. He relies solely on 28 U.S.C. § 1391(b), which provides that in any civil action where jurisdiction is not solely founded on diversity, venue is proper in one of three places: 1) in a district where a defendant resides, if all defendants live in the same state; 2) in a district where a substantial part of the events or omissions giving rise to the claim occurred; or 3) in a district where any defendant may be found, if there is no district where the

---

3. The doctrine of pendent personal jurisdiction is a confusing and complicated one which courts sometimes overlook. For additional discussion, *see* Heller, J., *Pendent Personal Jurisdiction and Nationwide Service of Process*, 64 N.Y.U.L.Rev.113 (April 1989); Cochran, J., *Personal Jurisdiction and the Joinder of Claims in the Federal Courts*, 64 Tex.L.Rev. 1463 (May 1986); *Huff v. Chandris SA*, 1994 WL 414467, *4 (S.D.N.Y. 1994); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F.Supp.2d 796 (N.D.Oh.1998).

action may otherwise be brought. Mefford argues that the first basis clearly does not apply because he resides in Wisconsin; that the second basis is likewise inapplicable because the acts alleged to give rise to the various causes of action, particularly the Lanham Act claim, took place in Wisconsin; and that the third basis need not be relied upon because venue would be proper under either of the first two prongs in Wisconsin. Mefford cites no cases to support his argument, but incorporates by reference his brief on the personal jurisdiction issue. Plaintiffs, also citing no authority, respond that venue is proper in Illinois because the allegedly breached contracts were authored and performed in that jurisdiction, and because the trademarked material was developed in that district.

As an initial matter, we agree with defendant that our inquiry on this issue boils down to determining, under § 1391(b)(2), where a substantial part of the acts giving rise to these claims occurred. Neither plaintiffs' allegations nor Mefford's representations indicate that he was a resident of Illinois at the time the action arose. Consequently, § 1391(b)(1) does not apply to this case. Similarly, because it is evident that either Wisconsin, where the alleged contractual breaches, tortious acts and passing-off occurred, or Illinois, where the contracts at the root of these claims were negotiated and performed, is a proper venue, we need not look to § 1391(b)(3).

Like the personal jurisdiction inquiry, determining where a claim arose and thus where venue is proper, is at best an imprecise task. District courts have a substantial amount of discretion in determining venue, which is an inquiry focused on fairness and convenience of the parties as opposed to constitutional considerations. *See, e.g., Phillips v. Seiter*, 173 F.3d 609 (7th Cir.1999). With respect to the Lanham Act claim it is commonly held that the events giving rise to the claim are deemed to occur where the "passing off" of the infringing product occurs. *See Halsoprodukter Labs Karnerud Ab. v. Gero Vita International*, 1993 WL 384525, *3–4

(N.D.Ill. September 28, 1993) (Aspen, J.). This is so because the "violation" under the Lanham Act is the "passing off" of an infringing product to the public and not the theft of the trademarked material or the affixing of the trademark to the unlicenced user's product. This rule is limited, however, by the requirement that a claim should not be "deemed to have arisen in a district in which the defendant has had only minuscule contact." *Chicago Reader, Inc. v. Metro College Publishing, Inc.*, 495 F.Supp. 441, 443 (N.D.Ill.1980) (citation and internal quotations omitted). Thus, "in a 'transitory' [intellectual property infringement] action, venue is proper only in those districts in which the trademark infringer has had significant activities." *Id.* (citation omitted). Were this rule absolute, we could simply conclude that because the alleged "passing off" in this case occurred primarily in Wisconsin, that is the only appropriate venue. The Seventh Circuit has, however, twice ruled that venue may be proper even in a district where no "passing off" occurred.

In *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership*, 34 F.3d 410, 412 (1994), the court ruled that a Maryland defendant was subject to personal jurisdiction in Indiana, despite the fact that the defendant had not sold or marketed the allegedly infringing product (a Baltimore professional football team bearing a name claimed to be confusingly similar to the Indiana team's name) in Indiana. The Seventh Circuit rested its decision on the fact that the team was viewed in Indiana via television broadcasts and on the court's belief that it was only a matter of time before the Baltimore team began to market merchandise nationwide containing the team's name. Without discussion, the court then concluded that "[i]t is as clear or clearer that venue is proper in Indiana." *Id.* Similarly, in *John Walker and Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399 (7th Cir.1987), the court responded to defendant's argument that venue was improper under the Lanham Act in a jurisdiction where it had not sold

the allegedly infringing product to the general public, by holding that although the district where "passing off" occurred was an appropriate venue, it is not the only appropriate venue in a trademark infringement case. The Seventh Circuit relied on a Supreme Court decision setting forth the analysis that a court should follow in determining where a cause of action arises for the purposes of venue under § 1391(b) when it is not clear that the plaintiff's claim arose in one specific judicial district. *See Leroy v. Great Western Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In *Leroy,* the Supreme Court stated:

> [I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts.... In our view, ... the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that will approximately equal plausibility-in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)-may be assigned as the locus of the claim.

Taking these various factors into consideration, we conclude that Illinois is not an improper venue for this case. In light of the fact that the contracts at issue were performed in Illinois, that the allegedly misappropriated lecture materials originally came into defendant Mefford's hands while working for plaintiffs in that state, and that the relationship between the parties was centered there, Illinois was a plausible venue for the plaintiffs to choose.

*Motion to Transfer*

■ Defendant has also moved to transfer venue to the district of Wisconsin. Although a plaintiff's forum selection is usually given substantial weight when it is the district in which the plaintiff resides, *Rob-*

*inson v. Town of Madison,* 752 F.Supp. 842, 847 (N.D.Ill.1990), in cases where that forum is not exclusively the place where the cause of action arose, the plaintiff's choice is only given consideration equal to the other factors considered when determining whether or not a transfer is appropriate. *Id.* To determine whether a transfer of venue is proper, defendant must establish that 1) venue is proper in the transferor court; 2) that venue is proper in the transferee court; and 3) that the transfer is "for the convenience of the parties and the witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *Countryman v. Stein Roe & Farnham,* 681 F.Supp. 479, 481 (N.D.Ill.1987).

While it is clear that under 28 U.S.C. § 1391 both Illinois and Wisconsin are proper venues, the parties' filings are so vague that it is impossible for us to determine at this time which is most convenient and just. The parties are consequently ordered to submit additional briefs on the matter. These filings should provide specific factual information, including what each party believes will be the contested issues at trial; exactly which of Mefford's actions plaintiffs allege to have violated his contracts, the Lanham Act and other Illinois law (*i.e.* conducting seminars in Wisconsin, conducting seminars in Texas, working for an Illinois radio station, *etc.*); who each party anticipates calling as a witness at trial, why their testimony is necessary, and where those witnesses are presently located; and any other *specific,* relevant facts that the parties believe bear on the transfer issue.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss on the ground of personal jurisdiction is denied, as is his motion to dismiss for improper venue. The parties are ordered to submit supplemental briefs on the issue of transferring venue. Defendant shall file his brief within ten days of the issuance of this order, and plaintiffs shall have ten days thereaf-

ter to respond. We will stay our decision on the parties' other motions until we decide whether a transfer to Wisconsin is appropriate.