AVALON HILL COMPANY *v.* GEBHARDT, ᴇᴛᴄ.

[No. 104, September Term, 1960.]

*Decided January 10, 1961.*

*Motion for modification of opinion filed February 9, 1961, denied February 17, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*J. Thomas Nissel* and *Raymond G. Thieme, Jr.,* with whom were *McDermott, Nissel & Thieme* on the brief, for the appellant.

*John W. Sause, Jr.,* with whom was *J. Calvin Carney* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order dismissing, after full hearing and extended testimony, a bill for an injunction and accounting against a competitor marketing a game involving the Battle of Gettysburg. The appellant contends that the box lid of the game of the defendant-appellee, known as "Change-it", is so similar to that of its game, known as "Gettysburg", "as probably to confuse the ordinary, casual purchaser."

We may note at the outset that the appellant does not claim

54

here and did not claim below that it acquired or could acquire any exclusive property rights in the name of the famous Battle or in the colors blue and gray, which because of the battle uniforms of the respective sides are symbolic of the historic struggle. These are matters in the public domain. Manifestly, any game utilizing the subject matter of the Battle would be in competition with a similar game first in the field and create at least a possibility of confusion. It does not follow that the competition could be enjoined for that reason alone. See *Drive It Yourself Co. v. North,* 148 Md. 609, *Hecht Co. v. Rosenberg,* 165 Md. 116, *Edmondson Village Theatre v. Einbinder,* 208 Md. 38, *National Shoe Stores Co. v. National Shoes of New York, Inc.,* 213 Md. 328, and *A. & H. Transportation, Inc. v. Save Way Stations, Inc.,* 214 Md. 325.

The chancellor found as a fact that the defendant's box lid was "not similar in color, style and design to the Complainant's box lid." We cannot say that he was clearly wrong. It is obvious at a glance that the design is different, and the name of the games is different. Each lid has on it in plain letters the names of the respective makers. The defendant's game is very much simpler to play and originally sold for a lower price. Aside from the basic similarity of the subject matter, there is nothing to show a likelihood of confusion.

Nor was there any clear evidence that the public was in fact deceived. The witness Scarburgh testified that when he first saw the defendant's game on display, he thought it was a simpler revision of the Avalon game but did not buy it because he realized, upon examination, that it was not put out by Avalon. The witness Bard testified that he saw the Gebhardt game on display and thought it was the Avalon game. But he did not inspect the game, merely observing it from a distance without intending to purchase it. There was no other testimony as to actual confusion.

The appellant contends, however, that even in the absence of proof of actual confusion, the name "Gettysburg", as applied to its game, had acquired a secondary meaning. What seems to be the principal evidence in support of the claim consists in proof of rather extensive advertising by the ap-

pellant, beginning in November, 1958, and a paucity of advertising by the appellee. We think this falls short of proving a secondary meaning, as the cases cited indicate. See also *Kellogg Co. v. Nat. Biscuit Co.,* 305 U. S. 111, 118. In the absence of proof of secondary meaning, no injunctive relief may be granted even though there is a possibility of confusion. That possibility is minimized in the instant case by reason of the facts that the names of the games are different and the names of the respective makers are plainly displayed.

The appellant relies strongly upon *Baltimore Bedding Corporation v. Moses,* 182 Md. 229. In that case it was held that although a secondary meaning had not been established, actual fraud or deceit was shown. Nevertheless, the court did not enjoin the use of the similar corporate name but merely required the defendant to "adopt such form of disclaimer as will show clearly and amply absence of connection with the appellees and their business" and thus remove the element of unfairness in the competition. See also the form of decree authorized in the *Nat. Shoe* case, *supra.* That result is already attained in the instant case.

While the bill of complaint alleged that the defendant "deliberately and fraudulently copied, imitated and simulated the box lid of its game so closely as to be calculated to deceive and actually deceive the * * * public generally", the president of the appellant testified that the allegation represented only a conclusion he drew from the fact that the appellee was marketing a game involving the same Battle. According to Gebhardt, he conceived the idea for the game in June, 1958," and had fully developed it before he became aware of the appellant's game when it was first put on the market about the end of August, 1958. Gebhardt testified he purchased one of these games to study it but found it too complicated. He did not desire to copy it in any way. He took a box lid of the "Gettysburg" game to his designer for the express purpose of composing a design that would be distinctly different. His game was put on the market in April, 1959, and this suit was filed on June 12, 1959. We think there was no proof of imitation, even if that were material. The important point is whether

56

the appellee represented himself directly or indirectly as the appellant in the sale of the game. See *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 Fed. 299 (2d Cir.).

The appellant's case must stand or fall upon proof of a likelihood that the ordinary purchaser would be confused or misled by the box lid itself into purchasing the appellee's product when he desired appellant's. We think the chancellor's finding on the point is supported by the evidence.

*Order affirmed, with costs.*