**SCOTCH WHISKY ASSOCIATION, and Major General Andrew Linton Watson, C.B., Colonel of the Regiment, as Chairman of the Regimental Trustees of the Regimental Trust Fund of the Black Watch, the Royal Highland Regiment, Plaintiffs,**

v.

**MAJESTIC DISTILLING COMPANY, INC., d/b/a Monumental Distilling Company, and Valley Liquors, Inc., Defendants.**

No. 87 C 9437.

United States District Court, N.D. Illinois, E.D.

March 3, 1988.

Beverly W. Pattishall, Charles R. Mandly, Jr., John T. Brown, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., for plaintiffs.

Geoffrey G. Gilbert, Thomas R. Leavens, McBride, Baker & Coles, Chicago, Ill., Mercer L. Stockell, William G. Pecau, Catherine H. Stockell, Pennie & Edmonds, of counsel, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This trademark and unfair competition action is before the Court on defendant Majestic Distilling's motion to dismiss for lack of venue, or, in the alternative, transfer for lack of venue to the District of Maryland. Majestic Distilling and plaintiffs have fully briefed their positions and each has moved for an award of attorney's fees. For the reasons set forth, the Court grants Majestic Distilling's motion to transfer for lack of venue to the District of Maryland and denies each motion for an award of attorney's fees.

### I. *Background*

There are two plaintiffs to this lawsuit, they are both from Scotland, and at least one of them is very interested in protecting the good reputation of Scotch Whisky.[1] That plaintiff is the Scotch Whisky Association, "organized and existing under the laws of the United Kingdom, and ... located at 20 Atholl Crescent, Edinburgh, Scotland." Complaint ¶ 1. The Scotch Whisky Association is an association of whisky distillers and merchants in Scotland and the United Kingdom, "organized ... for the purpose of promoting the ... trade in ... whisky produced in Scotland...." Complaint ¶ 6. The other plaintiff is an individual who is suing in his capacity as "Major General Andrew Linton Watson, C.B., Colo-

nel of the Regiment, as Chairman of the Regimental Trustees of the Regimental Trust Fund ("Regimental Trust") of The Black Watch, The Royal Highland Regiment ... created and existing under the laws of the United Kingdom ... [and] located at Regimental Headquarters, Balhousie Castle, Perth, Scotland." Complaint ¶ 2. The Regimental Trust (and Major General Andrew Linton Watson as Chairman) is empowered to act on behalf of The Black Watch, The Royal Highland Regiment. The Black Watch, The Royal Highland Regiment is part of an actual army; it is a "regiment of the Scottish Division of the Royal Army of The United Kingdom." Complaint ¶ 9.[2] The complaint alleges that "[s]ince long prior to the acts of defendants complained of herein, [The Black Watch, The Royal Highland Regiment] adopted and used [a certain] devise ... as its Regimental Badge." Complaint ¶ 10.[3]

There are two defendants to this lawsuit, they are both from the United States, and they both sell domestic whisky, gin, and vodka. One defendant is Majestic Distilling, a Maryland corporation with its principal (and only) place of business in Baltimore, Maryland. Cohen Aff. ¶ 2. Majestic Distilling is a relatively small manufacturer of alcoholic beverages, and all of its manufacturing, warehouse, and sales facilities are located in Maryland. Cohen Aff. ¶ 4. It sells its products to distributors throughout the United States, and alleg-

---

1. Scotch whisky is whisky that is produced in Scotland.

2. The Complaint alleges in paragraph 9 that The Black Watch, The Royal Highland Regiment ... is the world renowned regiment of the Scottish Division of the Royal Army of the United Kingdom. The Black Watch, The Royal Highland Regiment, traces its origins to the Independent Companies of the Highlanders, also known as the Black Watch, which were established in 1725. The Black Watch, The Royal Highland Regiment, has distinguished itself by its feats of arms throughout the world since the Eighteenth Century.

3. This is the Regimental Badge of the Black Watch, The Royal Highland Regiment:

edly uses the BLACK WATCH name and the Regimental Badge on the bottles of its domestic whisky, gin, and vodka. It has one salesperson, located in Maryland, who takes orders over the telephone from distributors and fills orders F.O.B. Maryland. Cohen Aff. ¶ 8. During the past calendar year, since January 1, 1987, Majestic Distilling sold over sixty percent of its BLACK WATCH products to distributors in Maryland. Cohen Aff. ¶ 10.[4] The only distributor in the Northern District of Illinois, the other defendant in this action, is Valley Liquors. Valley Liquors is an Illinois corporation with its principal place of business in the Northern District of Illinois. Over the past calendar year, Majestic Distilling sold approximately one percent of its BLACK WATCH products to Valley Liquors, and less than ten percent of its BLACK WATCH products to distributors throughout the State of Illinois. Cohen Aff. ¶¶ 10, 11. The Illinois Liquor Control Commission has issued Majestic Distilling a Non–Resident Dealer's license to ship its BLACK WATCH products to Illinois.

The focus of this lawsuit, however, is on Majestic Distilling. Over the past 15 months, plaintiffs have been asking the United States Patent and Trademark Office ("USPTO") to prevent Majestic Distilling from using the Black Watch name and the Regimental Badge on its domestic whisky, gin, and vodka products. Majestic Distilling has a registered trademark in the United States Patent and Trademark Office ("USPTO") of the name BLACK WATCH for "whisky" and has filed an application with the USPTO for a registered trademark of the name BLACK WATCH for "whisky, gin, and vodka." Registration Number 801,466 and Application Serial Number 570,221. On August 20, 1986, plaintiffs filed a Petition for Cancellation of Majestic Distilling's trademark registration with the Trademark Trial and Appeal Board in Washington, D.C., and also filed a Notice of Opposition to Majestic Distilling's application for trademark registration. Cancellation Number 15,678 and Opposition Number 74,649. On September 2, 1987, the Trademark Trial and Appeal Board dismissed plaintiffs' cancellation proceeding. On September 3, 1987, the Trademark Trial and Appeal Board dismissed plaintiffs' opposition proceeding.

On October 30, 1987, plaintiffs filed a three-count complaint in the Northern District of Illinois against Majestic Distilling and Valley Liquors. In their complaint, plaintiffs allege, *inter alia*, that defendants are using the BLACK WATCH name and the Regimental Badge on alcoholic beverages not produced in Scotland, that such use is likely to deceive the public into believing "that such alcoholic beverages have been produced in Scotland and said ... belief is likely to affect adversely the reputation and sale of alcoholic beverages produced in Scotland." Complaint ¶ 16.[5] In Count I, plaintiffs seek injunctive and monetary relief under the Lanham Trademark Act, 15 U.S.C. § 1125(a), the common law of unfair competition, and certain Illinois unfair competition provisions against both Majestic Distilling and Valley Liquors.[6] In Count II, plaintiffs seek review of the Trademark Trial and Appeal Board's Order dismissing their cancellation proceeding

---

**4.** All of the percentages used in this memorandum opinion and order are based on sales for the past calendar year, since January 1, 1987. Because of the small size of its operations, Majestic's sales records are primarily kept manually and Majestic could only manually accumulate the sales figures for BLACK WATCH products since January 1, 1987 for purposes of its motion to dismiss or transfer for improper venue. Cohen Aff. ¶ 10. Plaintiffs have not objected to the use of these percentages. The Court finds that they are probative but of course not determinative.

**5.** Plaintiffs also allege that the defendants' use of the BLACK WATCH name and the Regimen-

tal Badge is likely to deceive the public into believing that its alcoholic beverages are "sponsored by, approved by or connected with [The Black Watch, The Royal Highland Regiment], and said belief is likely to affect adversely the reputation of [The Black Watch, The Royal Highland Regiment]...." Complaint ¶ 19.

**6.** Count I is based on Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a); the common law of unfair competition; the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, para. 312, and the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Rev.Stat. ch. 121½, para. 262.

against Majestic Distilling. In Count III, plaintiffs seek review of the Trademark Trial and Appeal Board's Order dismissing their opposition proceeding against Majestic Distilling.

Majestic Distilling has now moved to dismiss or transfer plaintiffs' lawsuit on the ground that venue is improper in the Northern District of Illinois. Both parties have submitted very thorough briefs on the motion.

## II. *Discussion*

"Venue refers to locality, the place where a lawsuit should be brought." 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3801, at 3 (2d ed. 1986) (hereinafter Wright, Miller & Cooper). It is "primarily a matter of choosing a convenient forum," *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979), and, in most instances, the purpose of the venue rules "is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* at 183–84, 99 S.Ct. at 2716 (emphasis in original). The venue rules in transitory actions, as opposed to local actions, are entirely controlled by statute. *See Livingston v. Jefferson*, 15 F.Cas. 660, 664 (No. 8411) (C.C.D.Va.1811) ("[A]ctions are deemed transitory, where transactions on which they are founded, might have taken place anywhere; but are local where their cause is in its nature necessarily local."); Wright, Miller & Cooper, *supra*, § 3822 at 202–214 (& Supp.1987) (A local action usually involves a dispute over land, such as trespass, damage to real estate, and title; a transitory action is defined negatively as everything not local).

### 1. *Applicable Venue Rules*

█ Plaintiffs have brought a three-count complaint presenting separate causes of action, and venue must be proper as to each cause of action. *Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir.1985) (rejecting a "pendent venue" approach); Wright, Miller & Cooper, *supra*, §§ 3808 at 80. The first count includes claims for relief based on trademark infringement, common law

unfair competition, and certain Illinois unfair competition provisions. Because no specific statute governs venue for this particular cause of action, and because the cause of action is transitory, the first count is governed by the general venue statute, 28 U.S.C. § 1391(b). Section 1391(b) provides in pertinent part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where *all defendants reside, or in which the claim arose....*

*Id.* (emphasis added).

The second and third counts of the complaint are appeals from the Trademark Trial and Appeal Board's dismissal of plaintiffs' cancellation and opposition proceedings. These are transitory actions, but appeals from the Trademark Trial and Appeal Board decisions are governed by a specific venue statute, 15 U.S.C. § 1071(b)(4). Section 1071(b)(4) provides in pertinent part:

> If there be adverse parties residing in a plurality of districts not embraced within the same state, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction....

Courts have construed this section to apply only where there are multiple defendants or a single defendant residing in a foreign country. *Cardwell v. Investor's Analysis, Inc.*, 620 F.Supp. 1395, 1397 (D.D.C.1985) (This section applies "only if there are two or more defendants residing in separate districts or if there is a defendant residing in a foreign country."); *E & J Gallo Winery v. Candelmo*, 192 U.S.P.Q. 210, 211 (D.D.C.1976); *Besuner v. Farberge, Inc.*, 379 F.Supp. 278, 279 (N.D.Ohio 1974). Courts have also held that "as section 1071 is silent as regards a single adverse party [residing in the United States], it follows that the general law controlling on those subjects [of jurisdiction and venue] must apply." *Id.* at 279; *E & J Gallo Winery*, 192 U.S.P.Q. at 211; *Cardwell*, 620 F.Supp. at 1398.

In this case, plaintiffs have brought Counts II and III against Majestic Distilling, a single adverse party residing in the

United States. Therefore, as to all three causes of action against Majestic Distilling, the general Section 1391(b) venue rules apply, and the Court must find either that (a) all defendants reside in this District; or (b) the claim arose in this district. 28 U.S.C. § 1391(b). Because the Supreme Court has explained the meaning of the term "claim arose" for venue purposes, the Court will first examine this basis of venue.

2. *Where the Claim Arose*

Section 1391(b) provides that venue is proper in "the judicial district ... in which the claim arose." The language implies that there is one, and only one, judicial district in which the claim arises. With a claim of trademark infringement or unfair competition, however, courts at first were reluctant to find that the claim arose in only one district, because alleged "trademark infringers seldom limit their activities to a single state," and "infringing goods often find their way into many different judicial districts." Wepner, *Determining Where the Claim Arose Under 28 U.S.C. § 1391(b) in Multi–State Trademark Infringement Actions*, 12 Seton L.Rev. 767 (1982). Courts, therefore, avoided the literal language of Section 1391(b), and found that a claim arose in a district if any substantial part of the claim occurred there, or if more than a miniscule amount of events occurred there. *See, e.g., Hindu Incense v. Meadows*, 439 F.Supp. 844 (N.D.Ill.1977); *Honda Assoc., Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 890 (S.D.N.Y.1974) ("... whether the words 'the claim' in [Section 1391(b)] mean the *largest part* of the claim, a *substantial part* thereof, or *any part* thereof.") (emphasis in original). The broad reading of "claim arose" opened up trademark infringement or unfair competition defendants to suit in many inconvenient forums. Wepner, *supra*, at 772.

In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed. 2d 464 (1979), however, the Supreme Court cut back on the broad reading of "claim arose." The Court stated that Section 1391(b)

allows venue in "the judicial district ... in which the claim arose." Without de-

ciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts.... Rather, it restricted venue either to the residence of the defendants or to "a place which may be more convenient to the litigants"—i.e., both of them—"or to the witnesses who are to testify in the case." S.Rep. No. 1752, 89th Cong., 2d Sess. 5 (1966)....

In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* at 184–84, 99 S.Ct. at 2717 (footnotes omitted) (emphasis in original).

The Seventh Circuit has recently applied the general principles established in *Leroy* to a trademark infringement case. In *J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399 (7th Cir.1987), the plaintiff John Walker & Sons, Ltd. ("John Walker"), the producer of Johnny Walker Scotch Whisky, brought a trademark infringement action in the Northern District of Illinois. In its complaint, John Walker alleged that it had registered trademarks with the USPTO for the "Black Label" name and the "Striding Figure" symbol, and that the five defendants were using similar marks on deodorant cans in violation of the Lanham Trademark Act. Four of the defendants were residents of Florida and the other defendant, "DeMert," was an Illinois resident. The complaint alleged that the Florida defendants contracted with DeMert "to produce approximately 50,000 spray deodorant cans featuring alleged sim-

ulations of John Walker's "Black Label" and "Striding Figure" trademarks. *Id.* at 400. One of the Florida defendants provided DeMert with the alleged infringing artwork design for the cans, and DeMert produced the cans in the Northern District of Illinois and shipped them to Florida, from where they were subsequently sold in Panama and Columbia. The district court held, *inter alia,* that as to the Florida defendants, venue was improper under Section 1391(b).

The Seventh Circuit reversed. It began by noting that all the defendants do not reside in Illinois and therefore "venue is only proper in this case in the judicial district 'in which the claim arose.'" *Id.* at 405. The Court then discussed the general principles set out in *Leroy,* impliedly determined that the case was one in which the claim plausibly arose in more than one district, and then applied the *Leroy* analysis to balance (1) the availability of witnesses, (2) the accessibility of other relevant evidence, and (3) the convenience of the defendant. The Court concluded that since DeMert's employees who might testify at trial reside in Illinois, "an Illinois trial would be more convenient for the witnesses." *Id.* at 406. The Court further concluded that, since DeMert's business records were located in Illinois, as well as the correspondence between DeMert and the Florida defendants, "the majority of the relevant documentary evidence that might be used at trial is located in the Northern District of Illinois." *Id.* The court finally considered the last *Leroy* factor, the convenience of the defendants. It concluded that DeMert would of course not be inconvenienced by defending in Illinois, and, because the Florida defendants "conduct[ed] a significant amount of business in Illinois and maintain[ed] a continuing business relationship with DeMert in Illinois," their argument on inconvenience would be unavailing. *Id.* at 407. Accordingly, the Seventh Circuit found that the "claim arose" in Illinois and that venue was therefore proper under 28 U.S.C. 1391(b).

In this case, plaintiffs argue that *John Walker* involved a very similar factual situation. The Court disagrees. Unlike the Florida defendants in *John Walker,* Majestic Distilling did not contract with an Illinois corporation to produce in Illinois bottles of domestic whisky, vodka, and gin, and to place on the bottles alleged simulations of plaintiff's established name and symbol. Defendant Majestic produces all of its own products, and all of the production takes place in Maryland. Cohen Aff. ¶ 4. The labels on its products, the alleged unlawful simulations of the Black Watch name and the Regimental Badge, are affixed in Maryland. *Id.*

The facts in this case are similar to the facts in *Johnson Creative Arts v. Wool Masters,* 743 F.2d 947 (1st Cir.1984). In *Johnson,* a Massachusetts plaintiff alleged that a New York yarn manufacturing corporation and its owner encouraged retail outlets to substitute or "pass off" its yarn on orders for plaintiff's yarn. The Massachusetts plaintiff brought a trademark, unfair competition, and breach of contract action in Massachusetts against the two New York defendants and two Massachusetts retailers. The district court dismissed the case against the two New York defendants for improper venue, and allowed plaintiff thirty days to move for a transfer. Plaintiff failed to move and then appealed the dismissal to the First Circuit. On appeal, the plaintiff argued that the district court erred in finding that the defendants were not "doing business" in the district of Massachusetts, and in finding that the claim did not arise there.

The First Circuit affirmed. As to where the claim arose, the First Circuit quoted from *Leroy* and applied its principles:

We take [*Leroy* ] as indicating that residence of the plaintiff should be of little consequence to a finding of where the claim arose in this case. We also see no reason why the fact that two other defendants reside in Massachusetts should have any bearing on the dismissal of the claim for lack of venue as to [the New York defendants].

Furthermore, although [the New York defendants] did sell goods to retailers in Massachusetts, it sold goods to many retailers in many states; Massachusetts

sales amounted to only six to fourteen percent of total sales. The Complaint is based on [the New York defendants'] sales throughout the country, and the requested relief includes a blanket injunction and damages with respect to those sales. The claim on which [plaintiff] seeks relief from [the New York defendants] arose no more in Massachusetts than in any one of the many districts into which [the New York defendants] sent their products. Virtually all of the decisions and actions on the part of [the New York defendants] took place in the Southern District of New York. It is clear that the claim against [the New York defendants] must be brought in the Southern District of New York if it is to be brought anywhere, for that is the district which can most plausibly be assigned as the locus of the claim, in comparison with Massachusetts or any other district into which the goods were merely sent.

*Id.* at 955–56; *see also Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurants,* 760 F.2d 312 (D.C.Cir.1985) (claim did not arise in trademark action in District of Columbia where defendant made one and one-half percent of its total sales, and forty percent of its sales were made in California).

These decisions interpreting the general principles set out in *Leroy* establish that a plaintiff in a trademark or unfair competition action can no longer simply argue that the claim arises in each jurisdiction in which the "passing off" or other wrongful conduct occurs. *See* Plaintiff's Response Brief at 9 (citing *Vanity Fair Mills, Inc. v. T. Eason Co.,* 234 F.2d 633, 639 (2d Cir.) (in cases of trademark infringement and unfair competition the wrong takes place where the deceived customer buys the product), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495, 496 n. 1 (3d Cir.1976); *Parliament Import Co. v. Gibson Wine Co.,* 537 F.Supp. 72, 73–74 (E.D.Pa.1982); *Finance Co. of America v. Bankamerica Corp.,* 493 F.Supp. 895, 910 (D.Md.1980)). These cases to the contrary are either pre-*Leroy* or they simply fail to

apply the *Leroy* analysis. *See Noxell II,* 771 F.2d at 527 (criticizing *Gold Eagle Co. v. Li,* 486 F.Supp. 201 (N.D.Ill.1980) for its failure to discuss *Leroy*). For the same failure, see *Chicago Reader v. Metro College Publishing Co.,* 495 F.Supp. 441 (N.D. Ill.1980).

In this case, Majestic Distilling sold BLACK WATCH products to Valley Liquors in the Northern District of Illinois, but those sales amounted to only one percent of its total BLACK WATCH sales. Further, the complaint is based on BLACK WATCH sales throughout the United States, and the requested relief includes a blanket injunction and damages with respect to those sales. Moreover, all of the decisions and actions on the part of Majestic Distilling took place in Maryland, and sixty percent of its sales were made to Maryland distributors. Thus, under the principles set out in *Leroy* and applied to trademark infringement cases in *John Walker, Wool Masters,* and *Noxell,* if Majestic Distilling were the only defendant named in plaintiffs' suit, venue would clearly not be proper in the Northern District of Illinois.

Plaintiffs, however, have also named Valley Liquors, the Northern District of Illinois distributor of the alleged infringing products. The Supreme Court in *Leroy* recognized that a plaintiff may sometimes file suit against multiple defendants in a district which would be inappropriate as to one of the defendants. *Leroy,* 443 U.S. at 184 n. 17, 99 S.Ct. at 2717 n. 17; *Brunette Machine Works v. Kockum Industries,* 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 1939 n. 8, 32 L.Ed.2d 428 (1971). This would allow the plaintiff to maintain a single lawsuit against all of the alleged wrongdoers.

■ In this case, however, the plaintiffs have not attempted to maintain a single lawsuit in one district against all of the alleged wrongdoers. If plaintiffs were serious in their campaign to enjoin all trademark infringement or unfair competition, they would certainly direct their actions against the Maryland distributors who sell sixty percent of the allegedly infringing

BLACK WATCH products, sixty times more than the single distributor in the Northern District of Illinois. Plaintiffs have offered no explanation as to why they have sued only one minor distributor of Black Watch products. Though plaintiffs can properly join as defendants any parties against whom they have a cause of action, and can properly bring an action to prohibit improper conduct no matter how inconsequential it is in relative terms, plaintiffs cannot pick and choose minor distributors as defendants to lodge venue in an inappropriate place as to the defendant manufacturer. The Court should not allow plaintiffs to choose their forum by naming a local distributor as a co-defendant with the target defendant manufacturer. To do so would violate the spirit of *Leroy*.[7]

■ For the reasons discussed, the Court holds that, as to all three counts of the complaint, the claims against Majestic Distilling arose in the District of Maryland. That is the only district which can plausibly be assigned the locus of the claim.

3. *Residence*

Section 1391(b) provides that venue is also proper in the district in which all defendants reside. Under Section 1391(c), a corporation resides in those judicial districts in which it is incorporated, licensed to do business, or is doing business. Majestic Distilling is incorporated in Maryland, but plaintiffs argue that it is licensed to do business in the Northern District of Illinois and that it is doing business within the Northern District of Illinois.

*"Licensed to do Business"*

■ Majestic Distilling has a "Non–Resident Dealer's License" issued by the Illinois Liquor Control Commission pursuant to Ill.Rev.Stat. ch. 43, ¶ 115(*l*) (1986). Notwithstanding the "non-resident" language,

plaintiffs argue that this license establishes that Majestic Distilling has commercial ties to Illinois sufficient to require it to obtain a general license to do business in Illinois, and that, without the license, Majestic Distilling is doing business illegally. Plaintiffs rely on the language of paragraph 120, which provides that

> [n]o license of any kind issued by the [Illinois Liquor Control] Commission ... shall issue to ... [a] corporation unless it is incorporated in Illinois, or it is a foreign corporation which is qualified under the "Business Corporation Act of 1983" to transact business in Illinois.

Ill.Rev.Stat. ch. 43, para. 120 (10a) (1986).

The provisions of paragraphs 115 and 120 are literally inconsistent and contradictory. Paragraph 115 authorizes the Illinois Liquor Control Commission to issue to a non-resident a "Non–Resident Dealer's license" that allows the non-resident to ship alcoholic beverages to Illinois distributors; paragraph 120 prohibits any license of any kind to a non-resident corporation. The Court notes, without deciding, that plaintiffs' interpretation of these paragraphs would lead to a strange result. If paragraph 120 were interpreted to require that a "Non–Resident Dealer's License" shall not be issued to a corporation unless it is incorporated or qualified to do business in Illinois, then there would no longer be the need for the Non–Resident Dealer's License. As soon as the corporation qualifies to do business in Illinois, it ceases to be a non-resident. *See Smith v. Bowen*, 815 F.2d 1152, 1155 (7th Cir.1987) ("A literal construction is inappropriate if it would lead to absurd results or would thwart the obvious purposes of the statute.").

In the instant case, however, it is not necessary for the Court to interpret the contradictory language of paragraphs 115

---

**7.** Plaintiffs have included several Illinois state law causes of action in their complaint, and the Court notes that the presence of these causes of action do not make the Northern District of Illinois any less of an inappropriate forum as to Majestic Distilling. A Maryland federal district court can accurately apply Illinois law in the event that it decides that as to certain acts and occurrences Illinois law applies. The Court will

not allow the plaintiffs to forum shop by appending state law claims to their federal trademark and common law unfair competition claims. Moreover, plaintiffs allege that Majestic Distilling has violated its trademark rights across the United States, and it is curious that plaintiffs have limited the state law actions brought against Majestic Distilling to those based only on Illinois law.

and 120.[8] Regardless of the requirements established by paragraph 120, paragraph 120 merely imposes a duty on the Illinois Liquor Control Commission. If the Commission issued a Non–Resident Dealer's License to Majestic Distilling in violation of paragraph 120, it was a violation by the Liquor Control Commission. That fact simply does not affect the issue whether Majestic Distilling is licensed to do business in Illinois within the meaning of Section 1391(c). Majestic Distilling has a "Non–Resident Dealership license" but has never qualified under the "Business Corporation Act of 1983" to transact business in Illinois. Ill.Rev.Stat.Ann., ch. 32 para. 1.01 *et seq.* (1985). Majestic Distilling's Non–Resident Dealer's license, therefore, does not amount to a license to do business within the meaning of Section 1391(b).

### "Doing Business"

The last possible basis for venue under Section 1391(c) is whether Majestic Distilling is actually "doing business" in the Northern District of Illinois. The "doing business" portion of the general venue statute is "[t]he broadest and most used portion of the [general venue] statute," and "[i]t is also the portion that is the most difficult to construe."[9] Wright, Miller & Cooper, *supra,* § 3811, at 113. There are generally three different views on the appropriate test for "doing business" within the meaning of § 1391(c). *See id.* at 116–130. The Seventh Circuit has not yet expressly adopted a particular view.

One view is that the test for "doing business" should be the same as the test for determining whether a court has *in personam* jurisdiction over an out-of-state defendant. *Id.* at 117–18, 123 (citing cases and finding that this is the better view). Another view is that the test should require more business than would be required to make the defendant subject to the state long-arm statute. *Id.* at 118 (citing cases and criticizing this view; "Unfortunately the cases espousing this view give very little indication of how much more is required"). A third view is that the test should require business "to such an extent and of such a nature that the state in which the district is located *could* require the foreign corporation to qualify to 'do business' there." *Id.* at 120 (quoting *Johnson Creative Arts,* 743 F.2d at 954 (emphasis in original). Under this approach the Court would not look to the licensing statutes of any state in particular. Instead, it would determine whether a state could require a business with those particular contacts to the forum to obtain a license without violating the Commerce Clause. *See Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 31–32, 95 S.Ct. 260, 266–67, 42 L.Ed.2d 195 (1974) (The Commerce Clause prohibits a state

---

**8.** Majestic Distilling argues that paragraph 120 does not apply to holders of a Non–Resident Dealer's license, and has submitted an affidavit by Mr. Carlson, an attorney for the Illinois Liquor Control Commission. In the affidavit, Mr. Carlson testifies to the Commission's licensing practices for Non–Resident Dealer's licenses, the Commission's interpretation of the scope of the general licensing provisions in Paragraph 120, and the intent of the Illinois legislature in passing an amendment which created the Non–Resident Dealer's License. Plaintiffs have moved to strike Mr. Carlson's affidavit on the ground that the affidavit does not establish that Mr. Carlson has personal knowledge of the Commission's licensing practices, the Commission's interpretation of the scope of Paragraph 120, or the Illinois legislature's intent in passing the amendment creating Non–Resident Dealer's licenses. Plaintiffs therefore argue that defendant Majestic Distilling has not satisfied the foundation requirement that the affiant have personal knowledge of the matters to which he testifies. Further, plaintiffs argue that Mr. Carlson

does not testify that he represents the official position of the Commission or the Illinois state legislature and therefore his testimony is irrelevant, or, according to plaintiffs' brief, "unsubstantiated legal opinion."

For both of these reasons, the Court strikes Mr. Carlson's affidavit. As discussed in the text, however, without considering the affidavit, the Court finds that Majestic Distilling's Non–Resident Dealer's license does not amount to a license to do business within the meaning of the general venue provisions.

**9.** One of the difficulties is establishing the relevant time for determining if a corporation was "doing business" in the district. Should the relevant time be the date when the claim arose or the date when suit was brought? Because there is proper venue where the claim arose, however, most courts and commentators agree that "doing business" should be read as referring to the date when suit was brought. Wright, Miller & Cooper, *supra,* § 3811, at 116.

from requiring a foreign corporation to qualify to do business absent a sufficient amount of intrastate activity or localization of business in that state).

The federal district courts in the Northern District of Illinois have not adopted one clear view. Instead, they seem to have applied variations on the second view that requires more business than would be necessary to subject the defendant to the state long-arm statute. *See, e.g., Floralife, Inc. v. Floraline Int'l, Inc.*, 633 F.Supp. 108, 110–111 (N.D.Ill.1985) (more than miniscule business contacts); *Eiger Mach., Inc. v. Premier Mill Corp.*, 228 U.S.P.Q. 51, 53 (N.D.Ill.1985) [Available on WESTLAW, 1985 WL 5843] ("localized, systematic or regular business in the district"); *Westnofa USA, Inc. v. British Design (U.S.A.) Corp.*, 22 U.S.P.Q. 136, 139 (N.D.Ill.1983) ("continuous and systematic activity in the district").

■ Plaintiffs contend that this Court should apply the test that equates venue with personal jurisdiction. There is substantial scholarly authority for their position. Wright, Miller & Cooper, *supra,* § 3811, at 117–18 and 1 *Moore's Federal Practice,* ¶ 0.142 (5.–1–3) (2d ed. 1986). If the Court were to apply this test of "doing business," Majestic Distilling would probably be a resident of the Northern District of Illinois. This test, however, has been expressly rejected by the First Circuit and the District of Columbia Circuit. *Wool Masters,* 743 F.2d at 952; *Noxell I,* 760 F.2d at 316. These courts found that the constitutional issues underlying the test for personal jurisdiction differ significantly from the consideration of convenience that is the basis for the general venue statute. In *Wool Masters,* the First Circuit stated:

> Although both the due process requirement of minimum contacts and [Section 1391] are concerned, to some extent, with "fairness" to the defendant, the minimum contacts formula only measures the minimum amount of "fairness" required by the constitution for a state to exercise extraterritorial jurisdiction. The fact that a particular court's assertion of personal jurisdiction is not so "unfair" as to

deny a defendant due process does not necessarily mean that to hold trial there is "fair" in the sense contemplated by Congress in [Section 1391]. The two concepts are independent of each other....

This Court agrees with the reasoning in *Wool Masters* and *Noxell I* and declines plaintiffs' invitation to apply the "doing business" test that equates venue with personal jurisdiction.

The remaining two tests for "doing business" are very similar. Both tests require a certain degree of localized business activity, and it is difficult to determine which test is more demanding, because "doing business" under both of these tests is a question of fact on which many factors may be relevant. Under both tests, the courts look to all of the defendant's business activity. For example, in *Allenberg,* 419 U.S. at 33, 95 S.Ct. at 267, the Supreme Court found that a defendant's contacts with the State of Mississippi did not amount to "the sort of localization or intrastate character which [the Court has] required in situations where a state seeks to require a foreign corporation to qualify to do business."

> The Mississippi Supreme Court ... ruled that appellant was doing business in Mississippi. Appellant, however, has no office in Mississippi, nor does it own or operate a warehouse there. It has no employees soliciting business in Mississippi or otherwise operating there on a regular basis....

*Id.*

■ The *Allenberg* "localization" test is perhaps preferable to the "more than personal jurisdiction" test that has been applied in the Northern District of Illinois. The "localization" test is more clearly defined, and it is less manipulable. On the facts of this case, however, it does not matter which test the Court applies. Majestic Distilling has no offices, production facilities, or warehouses in the Northern District of Illinois. None of its employees, officers, or directors resides or works in Illinois. It maintains no Illinois address, telephone number, or post office box in Illinois. It does not advertise in Illinois.

Majestic Distilling simply has an Illinois "Non–Resident Dealer's" license to ship alcoholic beverages to Illinois; it has shipped less than ten percent of its BLACK WATCH products "F.O.B. Maryland" to distributors throughout the State of Illinois and one percent of its products to a distributor within the Northern District of Illinois; and one of its officers has attended two or three trade shows in the Northern District of Illinois within the last five years.[10] On these facts, Majestic Distilling's activity in the Northern District of Illinois fails both tests. Majestic Distilling's total business activity cannot be considered localized, systematic, or regular, and the State of Illinois could not require Majestic Distilling to qualify to do business.

For the reasons discussed, the Court holds that Majestic Distilling does not reside in the Northern District of Illinois and that therefore venue in the Northern District of Illinois is improper as to Majestic Distilling under Section 1391(b).

### 4. *Dismiss or Transfer*

■ 28 U.S.C. § 1406(a) (1985) permits a district court to transfer a case "laying venue in the wrong division or district" if the transfer would serve "the interest of justice." The Court concludes that it is in the interest of justice to transfer this lawsuit against Majestic Distilling to the District of Maryland. If the case is dismissed rather than transferred, plaintiffs' claims in Counts II and III would be barred by the sixty-day limitation that governs appeals to federal district courts from trademark cancellation and opposition proceedings. 15 U.S.C. § 1071(b). *See, e.g., E. & J. Gallo Winery,* 192 U.S.P.Q. at 213 (Section 1406(a) transfer warranted when "dismissal may effectively preclude the plaintiff from appealing the decision of the Trademark Trial and Appeal Board.").

### 5. *Attorney's Fees*

Majestic Distilling has moved for an award of attorney's fees pursuant to the Lanham Trademark Act, 15 U.S.C. § 1117(a) or Rule 11 of the Federal Rules of Civil Procedure. *See, e.g., Noxell Corp. v. Firehouse No. 1 Bar-b-que Restaurant,* 771 F.2d 521 (D.C.Cir.1985) (awarding attorney's fees under the Lanham Act for an "exceptional case"); *Eiger Machinery,* 228 U.S.P.Q. 51 (N.D.Ill.1985) (awarding attorney's fees under Rule 11). The Court does not find that any award of attorney's fees is warranted in this case. There is conflicting law regarding venue in trademark or unfair competition actions, and the Court does not find that plaintiffs' attempt to lodge venue in this District was made in bad faith, or was without any support in law or fact. Plaintiffs have argued for a broad range of venue for trademark and unfair competition cases, and the Court has rejected their arguments. These arguments, however, should not expose plaintiffs to liability for attorney's fees.

### *Conclusion*

Plaintiffs cannot maintain their lawsuit against Majestic Distilling in the Northern District of Illinois. The causes of action alleged in this suit did not arise in this district, and both defendants to the lawsuit do not reside in this district. Although venue is proper as to Valley Liquors, this Court will not allow plaintiff to join a minor distributor to lodge venue in a district inappropriate as to the manufacturer. Accordingly, plaintiffs' lawsuit against Majestic Distilling is severed and transferred, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the District of Maryland. Plaintiff's lawsuit against Valley Liquors, however, is not transferred. First, Valley Liquors has not moved to transfer the lawsuit against it. Moreover, the United States District Court for the District of Maryland is not a district where the lawsuit against Valley Liquors "might have been brought," *see* 28 U.S.C.

---

**10.** Plaintiffs also claim that Majestic Distilling's BLACK WATCH products are marketed in a state-wide trade publication called the *Illinois Beverage Journal.* Majestic Distilling, however, does not advertise in that publication and does

not in any other way advertise in Illinois. Cohen Aff. ¶ 9. Valley Liquors advertises in the *Illinois Beverage Journal,* and it does so without any sponsorship or control from Majestic Distilling. *Id.*

§ 1404(a): the cause of action against Valley Liquors did not arise in the District of Maryland, and Valley Liquors is not a resident of Maryland. The Court sets a status conference for the remaining case of *Scotch Whisky v. Valley Liquors,* for March 29, 1988 at 9:00 AM.