958 F.2d 594
 60 USLW 2636, 22 U.S.P.Q.2d 1050
 The SCOTCH WHISKY ASSOCIATION, Plaintiff-Appellant,
and
Andrew Linton Watson, as Colonel of the Regiment, and as
Chairman of the Regimental Trustees of the
Regimental Trust Fund of the Black
Watch, The Royal Highland
Regiment, Plaintiff,
v.
MAJESTIC DISTILLING COMPANY, INCORPORATED, d/b/a Monumental
Distilling Company, Defendant-Appellee. (Two Cases)
The SCOTCH WHISKY ASSOCIATION, Plaintiff-Appellee,
and
Andrew Linton Watson, as Colonel of the Regiment, and as
Chairman of the Regimental Trustees of the
Regimental Trust Fund of the Black
Watch, The Royal Highland
Regiment, Plaintiff,
v.
MAJESTIC DISTILLING COMPANY, INCORPORATED, d/b/a Monumental
Distilling Company, Defendant-Appellant.
 Nos. 91-2348, 91-2359 and 91-2360.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1991.
Decided March 4, 1992.
 
 Charles R. Mandly, Jr., Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, Ill., argued (Beverly W. Pattishall, John Thompson Brown, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, Ill., William R. Dorsey, III, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for plaintiff-appellant.
 William G. Pecau, Pennie & Edmonds, New York City, argued (Mercer L. Stockell, Catherine H. Stockell, Pennie & Edmonds, New York City, George Beall, Hogan & Hartson, Baltimore, Md., on brief), for defendant-appellee.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 SPROUSE, Circuit Judge:
 
 
 1
 The Scotch Whisky[1] Association (SWA)[2] sued the Majestic Distilling Company (Majestic) in district court alleging unfair competition. In the action, SWA also joined appeals from the Trademark Trial and Appeal Board decisions dismissing its opposition and cancellation proceedings against Majestic's use of the trademark BLACK WATCH. The district court granted summary judgment to Majestic. SWA appeals, claiming that there are genuine issues of material fact as to whether Majestic's trademark and trade dress would deceive customers into believing that Majestic's BLACK WATCH products originate in Scotland. Majestic cross-appeals the district court's denial of attorney fees under section 35(a) of the Lanham Act.[3] It claims that the district court erred in requiring that SWA acted in bad faith in order for Majestic to recover attorney fees. We affirm the district court's grant of summary judgment as to SWA's claims but remand for reconsideration of Majestic's request for attorney fees under section 35(a) of the Lanham Act.
 
 
 2
 * In 1964, Majestic, a Maryland-based liquor bottler and distributor, began marketing a Scotch whisky under the name BLACK WATCH. The original label prominently displayed a sailing ship. In 1965, it designed a new label product comprised of a combination of the words BLACK WATCH, a military regimental badge which is substantially identical to the badge of the Black Watch Regiment of Scotland, a thistle, and the word "Highlander" which appears in the regimental badge decoration. In 1966, Majestic obtained federal registration of the mark BLACK WATCH for "whisky." It thereafter expanded its BLACK WATCH product line to include blended whiskey (1967), gin (1971), and vodka (1977). The labels on each of these bottles, like the Scotch whisky label, contains the words BLACK WATCH, the regimental badge, a thistle, and the word "Highlander". Since 1964, Majestic has continuously marketed the BLACK WATCH product line. In 1985, it sought to register its BLACK WATCH trademark for its gin and vodka products.
 
 
 3
 In 1986, SWA filed an opposition proceeding with the Trademark Trial and Appeal Board (the Board) against Majestic's application to register the mark BLACK WATCH for its gin and vodka products. SWA alleged that Majestic's use of the mark BLACK WATCH for gin and vodka violated sections 2(a)[4] and 2(e)(2)[5] of the Lanham Act because consumers are likely to be deceived into believing that those products originated in Scotland. Concurrently, SWA filed a cancellation proceeding under section 2(a) of the Lanham Act against Majestic's registered trademark BLACK WATCH for "whisky," which had been registered since 1966.[6] SWA alleged that consumers are likely to be deceived into believing that Majestic's blended whiskey originated in Scotland. The Board dismissed both SWA's opposition and cancellation claims, holding that because the term BLACK WATCH was not a geographic place name, it was legally incapable of being deceptive as to geographic origin under section 2(a) of the Lanham Act.
 
 
 4
 In 1987, SWA filed this civil action in the United States District Court for the Northern District of Illinois against Majestic and Valley Liquors (a Majestic distributor located in Illinois). SWA charged Majestic with unfair competition. SWA also appealed the Board's dismissal of its opposition and cancellation proceedings. Majestic, in turn, filed a counterclaim against SWA for malicious prosecution and maintenance.
 
 
 5
 The Illinois district court ruled that venue was improper in Illinois and ordered the action against Majestic transferred to the district court of Maryland. Scotch Whisky Ass'n v. Majestic Distilling Co., 681 F.Supp. 1297 (N.D.Ill.1988). The Maryland district court granted summary judgment to Majestic. The court reasoned that the legal test common to all deceptive as to origin claims under sections 2(a), 2(e)(2), and 43(a) of the Lanham Act is whether there is a likelihood of confusion. After reviewing the evidence, the court concluded that SWA had failed to raise a genuine issue of material fact concerning consumer confusion as to the national origin of Majestic's products. As to Majestic's counterclaim against SWA for malicious prosecution and maintenance, the court granted summary judgment in favor of SWA.
 
 
 6
 Majestic then moved for attorney fees, costs, and sanctions against SWA under Federal Rule 11 of Civil Procedure and section 35(a) of the Lanham Act. Although it stated that SWA's claims were not well grounded in law or in fact, the court denied Majestic's motion because it could not conclude that SWA's arguments were brought for an improper purpose.
 
 
 7
 On appeal, SWA claims that the district court erred in granting summary judgment because there are genuine issues of material fact as to whether Majestic's trademark and trade dress would deceive customers into believing Majestic's BLACK WATCH products originated in Scotland.[7] Majestic cross-appeals the district court's denial of attorney fees under section 35(a) of the Lanham Act, arguing that a finding of bad faith by the plaintiff, SWA, is not necessary.
 
 II
 
 8
 SWA pursues its unfair competition claims against Majestic under the Maryland Consumer Protection Act,[8] section 43(a) of the Lanham Act, Articles 10 and 10bis of the Paris Union Convention (1883) via sections 44(b) and (h) of the Lanham Act, and the common law of Maryland. The district court, without discussing each of SWA's claims, stated that SWA, as a party asserting an unfair competition claim, must show a likelihood of confusion as to the product's origin.
 
 
 9
 We agree with the district court's application of the "likelihood of confusion" test not only to section 43(a) of the Lanham Act but to unfair competition actions under Maryland common law and Article 10 and 10bis of the Paris Union Convention as incorporated into the Lanham Act.[9]
 
 
 10
 It is well established that the test for unfair competition claims under section 43(a) of the Lanham Act is whether there is a likelihood of confusion. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir.1984). This test is also applied to unfair competition claims under Maryland common law. See Perini Corp. v. Perini Constr. Inc., 715 F.Supp. 719, 721 (D.Md.1989), rev'd on other grounds, 915 F.2d 121 (4th Cir.1990); Avalon Hill Co. v. Gebhardt, 224 Md. 52, 166 A.2d 740, 742 (1960); and Edmondson Village Theatre, Inc. v. Einbinder, 208 Md. 38, 116 A.2d 377, 379-80 (1955).
 
 
 11
 The Paris Union Convention prohibits, among other things, unfair competition. Specifically, it prohibits the indirect or direct false designation of origin, Article 10, and dishonest trade practices, Article 10bis. SWA argues that the rights conferred by the Paris Union Convention exceed those conferred by the Lanham Act. We disagree. Section 44(b) of the Lanham Act gives those persons whose country of origin is a party to a treaty relating to unfair competition only those benefits of section 44 necessary to give effect to the treaty. See 15 U.S.C. § 1126(b). Subsection 44(h) of the Lanham Act, among other things, provides international parties effective protection against unfair competition in general. See 15 U.S.C. § 1126(h). Subsections 44(b) and 44(h) thus work together to provide foreign nationals with rights under United States law which are coextensive with the substantive provisions of the treaty involved.
 
 
 12
 The language of section 43(a) of the Lanham Act is, of course, more specific than that used in the Paris Union Convention.[10] By its use of generalities, the Convention provisions relied on by SWA might well cover acts of unfair competition beyond those related to the unfair use of trademarks. However, it is the alleged unfair use of trademarks that is involved in this litigation, specifically the deceptive use of a description of a product's origin. The broad language of the Paris Union Convention in its application here cannot apply to a spectrum of unfair competition that is broader than that covering the use of trademarks which deceptively indicate a product's origin. We think then, as apparently did the district court, that vis-a-vis trademark protection under the Paris Union Convention gives no greater protection than that already provided by section 43(a) of the Lanham Act. Cf. Toho Co., LTD v. Sears, Roebuck and Co., 645 F.2d 788, 792 (9th Cir.1981) (construing the Treaty of Friendship, Commerce and Navigation and sections 44(b) and (h) of the Lanham Act). In sum, if there is no likelihood of confusion as to the origin of Majestic's products, SWA has no cause of action for unfair competition.
 
 
 13
 SWA argues that, even if the test is "likelihood of confusion," in granting summary judgment the district court ignored the presumption that all inferences are to be drawn in favor of the non-moving party. It argues that the district court erred when it relied on other products which use the registered trademark BLACK WATCH to establish use, failed to recognize that the majority of articles found in SWA's NEXIS search of the words Black Watch had strong Scottish connotations, ignored the dictionary definitions of Black Watch, thistle, and highlander, ignored Majestic's admission that it originally adopted its BLACK WATCH labels to make them as "scotch" looking as possible, and placed great weight on SWA's inability to present evidence of actual consumer confusion as to the origin of Majestic's BLACK WATCH products.
 
 
 14
 While we agree that third party registrations may not be evidence of use of the mark nor the public's understanding of the mark, see Scarves By Vera, Inc. v. Todo Imports, Ltd., 544 F.2d 1167, 1173-74 (2d Cir.1976), both SWA and Majestic presented substantial evidence of news stories and advertisements to show actual use of the mark BLACK WATCH on goods having no Scottish connection to Scotland. Further, contrary to SWA's assertion, the district court did not ignore SWA's NEXIS search of the words Black Watch. Rather, it noted that the search revealed many items wholly unrelated to Scotland.
 
 
 15
 Although the dictionary defines Black Watch as a Scottish infantry regiment, SWA produced no evidence that the public would understand it as such. We simply do not believe this creates an issue of material fact, especially considering that the labels clearly indicate the products are made in the United States.[11] Moreover, the labels contain no express reference to Scotland nor were the products ever advertised as being of Scottish origin. More importantly, gin, blended whiskey, and vodka are not characteristically products of Scotland.
 
 
 16
 There is nothing in the record to show that use of the word "highlander," the badge, or the thistle creates a likelihood of public confusion. The word "highlander" cannot be discerned from the label without the aid of a magnifying glass. As the district court found, SWA presented no evidence that the public would recognize the badge on Majestic's BLACK WATCH products as the regimental badge of the Black Watch regiment. Although a thistle may be the national symbol of Scotland, again, SWA produced no evidence suggesting that the public would understand it as anything more than a prickly plant or that anyone would interpret the particular design on Majestic's labels as a thistle.
 
 
 17
 Majestic's admission that it originally adopted the BLACK WATCH label for its Scotch whisky because it had strong Scotch connotations is of little consequence. Contrary to SWA's assertion, this admission in no way suggests that Majestic intended to deceive consumers as to the origin of its products; Majestic's Scotch whisky was, and is, 100% Scotch whisky.
 
 
 18
 Although this circuit holds that proof of actual confusion is not necessary to establish a likelihood of confusion, Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 (4th Cir.1990), we agree with the First Circuit that "[a]fter the lapse of substantial time if no one appears to have been actually deceived that fact is strongly probative of the defense that there is no likelihood of deception." Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 377 (1st Cir.1980) (citation and ellipses omitted). So, like the district court, we find significant here the fact that SWA was unable to produce any evidence of actual customer confusion after twenty-five years of use and millions of dollars of sales. Considering all of the facts in the light most favorable to the non-moving party, see Perini Corp. v. Perini Constr. Inc., 915 F.2d 121, 124 (4th Cir.1990), we simply do not believe that there is a genuine issue of fact as to whether the public will be deceived as to the origin of Majestic's BLACK WATCH products. We, therefore, affirm the district court's grant of summary judgment to Majestic.
 
 III
 
 19
 Majestic argues that the district court applied the wrong standard in ruling on its request for attorney fees under section 35(a) of the Lanham Act. It urges that the bad faith requirement upon which the district court relied only governs applications for awarding attorney fees to a prevailing plaintiff. It insists that a different standard governs a fee application by a prevailing defendant. We agree.
 
 
 20
 Section 35(a) of the Lanham Act provides that a court may award attorney fees to the prevailing party in "exceptional cases." See 15 U.S.C. § 1117(a). Our sister circuits which have interpreted this provision have not agreed as to its meaning. Some appear to require an unqualified showing of bad faith, irrespective of the prevailing party, to succeed in an application for attorney fees. See Motown Productions, Inc. v. Cacomm, Inc., 849 F.2d 781, 786 (2nd Cir.1988) (exceptional circumstances include cases in which losing party prosecuted or defended action in bad faith); Frisch's Restaurants v. Elby's Big Boy, 849 F.2d 1012, 1017 (6th Cir.1988) (to recover attorney fees infringement must be wilful, fraudulent, or deliberate); U-Haul Intern., Inc. v. Jartran, Inc., 793 F.2d 1034, 1044 (9th Cir.1986) (defendant's acts must be malicious, wanton, and oppressive); The Post Office v. Portec, Inc., 913 F.2d 802, 812 (10th Cir.1990) (defendant found to have acted wilfully and intentionally); Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir.1982) (attorney fees under the Lanham act should only be awarded on evidence of fraud or bad faith).
 
 
 21
 Other circuits have held that a finding of bad faith, apparently irrespective of the prevailing party, is not a prerequisite for an award of attorney fees. See Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 123 (8th Cir.1987) (absence of bad faith is not alone determinative on issue of fee awards under the Lanham Act), and Standard Terry Mills, Inc. v. Shen Manuf. Co., 803 F.2d 778, 782 n. 7 (3d Cir.1986) (defendant's motion for attorney fees denied because plaintiff's infringement action was not groundless or brought primarily for the purpose of harassment).
 
 
 22
 Our view of the Act's legislative history persuades us that neither line of cases has completely captured congressional intent with regard to recovery of attorney fees. We think rather that the District of Columbia Circuit in Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521 (D.C.Cir.1985), has correctly distilled a critical analytical difference depending on whether the plaintiff or the defendant prevails. The Noxell court held that a prevailing defendant needs to show "[s]omething less than bad faith" to award fees and awarded attorney fees to the defendant because plaintiff's venue selection improperly and unreasonably imposed a hardship on the defendant. Id. at 526-27.
 
 
 23
 Like the Noxell court, we believe that a finding of bad faith on the part of a plaintiff is not necessary for a prevailing defendant to prove an "exceptional" case under section 35(a) of the Lanham Act. It is clear, however, that for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith. The Senate Report states:
 
 
 24
 Deliberate and flagrant infringement of trademarks should particularly be discouraged in view of the public interest in the integrity of marks as a measure of quality of products. Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights. It would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate and willful.
 
 
 25
 S.Rep.No. 1400, 93rd Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 7132, 7136. In contrast, the Senate Report when discussing prevailing defendants states:
 
 
 26
 The bill would also permit prevailing defendants to recover attorney fees in exceptional cases. This would provide protection against unfounded suits brought by trademark owners for harassment and the like.
 
 
 27
 . . . . .
 
 
 28
 Section 3 provides that attorney fees may be awarded to the prevailing party in actions under the federal trademark laws, when equitable considerations justify such awards. It would make a trademark owners' remedy complete in enforcing his mark against willful infringers, and would give defendants a remedy against unfounded suits.
 
 
 29
 Id. at 7136-37.
 
 
 30
 Significantly, in discussing fee awards to plaintiffs, the report speaks of acts characterized as "malicious, fraudulent, deliberate and willful." Notably absent in the discussion relating to fee awards to prevailing defendants is language suggesting a requirement of bad faith. This is consistent, we think, with the report's discussion of attorney fees to a plaintiff as completing his remedy whereas the discussion of fees for a winning defendant is couched in terms of providing the only remedy. Under the Lanham Act, of course, a prevailing plaintiff may receive, in addition to an award of attorney fees, compensatory damages, an accounting, and treble damages. See 15 U.S.C. § 1117(a) and (b). A prevailing defendant who has been wrongfully charged of falsely designating origin has only one source of restitution, recovery of attorney fees. See 15 U.S.C. § 1117(a).
 
 
 31
 We therefore remand Majestic's claims for attorney fees under section 35(a) of the Lanham Act to the district court for consideration under the appropriate standard.
 
 
 32
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 "Whisky" spelled without an "e" is commonly used to refer to whisky distilled in Scotland, whereas "whiskey" is used to refer to whiskey distilled in the United States or Ireland
 
 
 [2]
 SWA is a United Kingdom association of Scotch whisky distillers organized to promote interest in, and trade in, whisky produced in Scotland
 
 
 [3]
 15 U.S.C. § 1117(a)
 
 
 [4]
 Section 2(a) of the Lanham Act prohibits, in part, registration of "deceptive" trademarks. 15 U.S.C. § 1052(a). Deceptive trademarks which are registered may be canceled at any time. 15 U.S.C. § 1064(3)
 
 
 [5]
 Section 2(e)(2) of the Lanham Act prohibits, in part, registration of marks that are "primarily geographically descriptive or deceptively misdescriptive." 15 U.S.C. § 1052(e)(2)
 
 
 [6]
 Major General Andrew Linton Watson, former Chief-of-Staff of the Allied Forces in Northern Europe, Colonel in the Black Watch Regiment, and Chairman of the Trustees of the Regimental Trust Fund of the Scottish Regiment, joined SWA's cancellation proceeding before the Board and was a party to the civil action below. However, since he is not a party to this appeal, we will not discuss his claims against Majestic
 
 
 [7]
 In addition to arguing that summary judgment was appropriate because there are no genuine issues of material fact, Majestic offers two additional grounds to support the district court's decision: as a matter of law, terms which are not geographic places cannot be geographically deceptive, and laches. Since we agree that there are no genuine issues of material fact, we do not address these arguments
 
 
 [8]
 Md.Comm.Law Code Ann. § 13-101 et seq
 
 
 [9]
 We readily eliminate SWA's claim under the Maryland Consumer Protection Act. SWA, a trade association, does not come within its definition of consumer. See Md.Com.Law Code Ann. § 13-101(c) and Layton v. AAMCO Transmissions, Inc., 717 F.Supp. 368, 371 (D.Md.1989) (the Maryland Consumer Protection Act only provides a cause of action for consumers)
 
 
 [10]
 Section 43(a) provides in part:
 (a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
 (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or ...
 shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 15 U.S.C. § 1125(a).
 
 
 [11]
 The labels on Majestic's blended whiskey, vodka, and gin designate Baltimore, Maryland, as the bottling location. The gin and vodka labels state "product of U.S.A."